**In re RIFFE PETROLEUM COMPANY, etc., et al., debtors in possession, Plaintiffs-Appellees,**

v.

**CIBRO SALES CORP., et al., Defendants-Appellants.**

**CIBRO SALES CORP., etc., et al., Petitioners,**

v.

**H. Dale COOK, Chief Judge, United States District Court for the Northern District of Oklahoma, Respondent.**

Nos. 78–1860, 78–1916.

United States Court of Appeals, Tenth Circuit.

Argued March 12, 1979.

Decided June 28, 1979.

John M. Kobayashi, Denver, Colo. (Richard L. Schrepferman, Francis F. Kethcart, A. Edgar Benton and Holme, Roberts & Owen, Denver, Colo., with him on the briefs), for defendants-appellants and petitioners, Cibro Sales Corp., et al.

James D. Fellers, Oklahoma City, Okl. (John Joseph Snider, Margaret McMorrow-Love and Fellers, Snider, Blankenship, Bailey & Tippens, Denver, Colo., Eugene R. Lippman and Krusen, Evans & Byrne, Philadelphia, Pa., with him on the brief), for defendant-appellant, A. Robert Degen.

Fred S. Nelson, Tulsa, Okl. (Claire Eagan Barrett and Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Irvine E. Ungerman, Thomas J. Elkins and Ungerman, Conner, Little, Ungerman & Goodman, Tulsa, Okl., Mark Hulsey, Jr., and Smith, Hulsey, Schwalbe, Jacksonville, Fla. and Nichols, B. Hayden Crawford and Crawford & Jackson, Tulsa, Okl., with him on the briefs), for plaintiffs-appellees and respondent.

Before SETH, Chief Judge, and BREITENSTEIN and LOGAN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

These companioned cases relate to contempt orders of the United States District Court, Northern District of Oklahoma, for claimed violations of a stay order which it had entered in a pending bankruptcy matter. By proceedings in the United States District Court for the District of New Jersey, the appellants and petitioners had secured the arrest of a ship which was under a time charter to one of the debtors. The New Jersey court held that the seizure did not violate the Oklahoma stay order. The Oklahoma court held to the contrary. No. 78–1860 is an appeal by those adjudged guilty of civil contempt. No. 78–1916 is an application for a writ of prohibition to stay contempt proceedings against others. We reverse the adjudications of contempt and grant the writ.

Appellees, Riffe Petroleum Co. and its subsidiaries, including Asphalt International, Inc. (AI) and West Bank Oil, Inc., are debtors in possession in a Chapter XI proceeding in Bankruptcy, 11 U.S.C. § 701 et seq. Their petition was filed in the Oklahoma court on June 2, 1978, and on June 5 the court entered a stay order.

On October 24, 1977 AI had entered into a "Time Charter Party" maritime contract with Dodona Shipping Corp. for the use of an asphalt carrying vessel, the M/V ASPHALT MERCHANT. To maintain the asphalt cargo at proper temperature, the vessel required large quantities of bunker oil. Cibro Sales Corp. supplied bunker oil to the vessel both before and after the filing of the bankruptcy petition and had not been paid. Cibro was listed as a creditor in the Ch. XI proceedings, and a copy of the stay order was mailed to it on June 9, 1978.

On June 16, Cibro filed in the New Jersey court a Complaint in Rem against the M/V ASPHALT MERCHANT to enforce a maritime lien for the furnishing of necessaries, fuel oil, to the vessel. See 46 U.S.C. § 971. Cibro claimed that $235,194.82 was owing to it. Pursuant to a Writ of Arrest issued by

the New Jersey court, the ship was seized on June 17 as it lay along a discharge berth at Petty's Island, New Jersey. At the time of its arrest, the ship was carrying asphalt destined for a two-port delivery at Petty's Island and Providence, Rhode Island. Appellants Degen and Connell acted as attorneys for Cibro in procuring the seizure of the ship.

After the seizure, the ship's captain, on orders from its owner, refused to permit the unloading of the cargo. The seizure was of the ship and not its cargo. The record discloses that West Bank Oil, one of the bankruptcy debtors, was to receive part of the cargo.

Cibro did not apply to the Oklahoma bankruptcy court for modification of the stay order. The Debtors knew of the seizure. They obtained an order from the Oklahoma court permitting them to intervene in the New Jersey suit and to send $300,000 to a Philadelphia lawyer to obtain the release of the ship. They did not intervene and the money was not used. The New Jersey proceedings were handled by United States District Judge Brotman and the Oklahoma proceedings by United States District Judge Barrow. The record shows that Judges Brotman and Barrow had several telephone conversations relating to the seizure of the ship.

In a June 23 hearing of which all interested parties had notice, Judge Brotman considered whether the admiralty proceedings violated the stay order. He concluded that they did not because under maritime law the Time Charter Party conferred no property rights on AI and, hence, there was no interference with any property right of the Debtors. Judge Brotman offered to take appropriate action to allow an expedited appeal to the United States Court of Appeals for the Third Circuit. No appeal was taken. Shell Curacao, the exporter of the cargo, offered to pay the Cibro bill on the assignment to it of the Cibro claim against AI. This was apparently done. The seizure was released on June 29. No cargo was unloaded during the period of seizure.

Pursuant to a petition of the Debtors, Judge Barrow on July 14 entered an order requiring Cibro and its attorneys Degen and Connell to appear before him on September 6 and show cause why they should not be held in contempt for violation of the stay order. The three so charged filed special appearances asserting that the Oklahoma court had no jurisdiction over them. Judge Barrow held a three-day evidentiary hearing. We ignore the manner in which this hearing was conducted because it has no affect on our decision. At its conclusion, Judge Barrow made an oral order finding Cibro and lawyers Connell and Degen in contempt for violation of the stay order. Cibro was ordered to pay the Debtors $212,118.73 in damages, plus a possible additional amount dependent on circumstances of no present interest, and to pay Shell Curacao $163,220.23 and be reassigned its claims against AI. The court further ordered that Christopher Bohlman, the general manager of Cibro, Connell, and Degen be incarcerated until compliance with the court's payment order. Incarceration of Bohlman was stayed for 30 days but lawyers Connell and Degen were immediately placed in custody and remained in jail for several hours until Cibro posted a supersedeas bond in the amount of $475,000. Our case No. 78–1860 is an appeal by Cibro, Connell, and Degen from the contempt judgment.

After the docketing of the appeal in No. 78–1860, Judge Barrow issued show cause orders directed to Frank Cirillo and Nicholas W. Cirillo, officers of Cibro, and to Nicholas J. Healy and Allan A. Baillie, members of a law firm which represented Cibro in the New Jersey proceedings. The orders required that the named parties appear and show cause why they should not be held in contempt for failure to comply with certain post-judgment matters and for failure to cause Cibro to pay the prior contempt judgment. The charged parties then petitioned the court of appeals to vacate the show cause orders and to enjoin further action with respect thereto. We granted a stay until final disposition of the case. No. 78–1916 is the petition for prohibition. We companioned Nos. 78–1860 and 78–1916 for hearing and disposition.

The bankruptcy court held Cibro and its attorneys guilty of an action which the admiralty court held proper under maritime law. Conflicts and potential conflicts between admiralty and bankruptcy law have been noted by legal scholars. See, e.g., Landers, The Shipowner Becomes a Bankrupt, 39 U. of Chi.L.Rev. 490. When a bankruptcy stay order collides with a maritime lien, problems are bound to arise.

The bankruptcy stay order enjoins all persons from taking any court action "impounding, taking possession of, interfering with, or enforcing any security interest, mortgage interest or other lien or encumbrance upon any property owned by or in the· possession ·of the Debtor," and "from directly or indirectly doing any act that would interfere in any way with the possession or management of any of the Debtor's property * * *."

The New Jersey court held that the debtor AI "has no incidents of ownership and, in fact, has no possession of the M/V ASPHALT MERCHANT"; that there was no dispute as to the validity of the lien against the ship, and that the seizure should not be quashed because of the stay order. The prime issue is whether the admiralty proceedings were directed against property of the Debtor subject to the bankruptcy court's summary jurisdiction.

AI and the ship's owner entered into a "Time Charter Party," which is essentially a lease of cargo space on a vessel for a set period of time. The shipowner is required to man the ship, to pay the crew, and to maintain the ship and its facilities in good operating condition. The owner retains the right to change the ship's registry and to substitute another vessel. The charterer is required to pay a monthly charge for the vessel's services as well as to provide all fuel and pay various fees. The charterer has the right to employ the vessel as it desires from port to port and to sublease.

A time charter "is a contract for a special service to be rendered by the owners of the vessel" and is to be distinguished from "a contract for the lease of the vessel." *Leary v. United States*, 81 U.S. (14 Wall.) 607, 610, 20 L.Ed. 756. The latter is a demise or bare-boat charter under which the charterer takes possession of the ship, mans it, and becomes in effect the owner for the length of the charter. *Marr Enterprises, Inc. v. Lewis Refrigeration Co.*, 9 Cir., 556 F.2d 951, 957–958. Under a time charter, the ship owner agrees to carry goods in a ship in which the charterer has no property interest. *Bergan v. International Freighting Corp.*, 2 Cir., 254 F.2d 231, 232. AI does not claim ownership of the M/V ASPHALT MERCHANT. Appellees' Br. at 13–14.

The maritime lien is a unique security device which serves the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away. The Maritime Lien Act, 46 U.S.C. § 971, grants a lien on a vessel for necessaries supplied to that vessel. Debtors do not dispute that fuel oil is necessary. The lien arises automatically upon the furnishing of necessaries and may operate to the prejudice of prior mortgagees or of purchasers without notice. *Piedmont & Georges Creek Coal Company v. Seaboard Fisheries Company*, 254 U.S. 1, 12, 41 S.Ct. 1, 65 L.Ed. 97. The lien arises regardless of who has the responsibility to pay for the necessaries. See § 971, and *The Golden Gate*, 9 Cir., 52 F.2d 397, cert. den., 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576. The vessel is considered a distinct entity responsible for its own debts. The lien is a proprietary right in the vessel itself as distinct from any personal liability. *In re Marine Transit Corp.*, 2 Cir., 94 F.2d 7, 9. The lien is enforced through an in rem proceeding under Rule C, Supplemental Rules for Certain Admiralty and Maritime Claims, F.R.Civ.P. Jurisdiction lies in the district where the vessel is located. *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 5 Cir., 508 F.2d 1113, 1115. The New Jersey proceeding was strictly against the ship and did not seek any in personam judgment.

The unique attributes of a Time Charter Party and a maritime lien must be considered together with the broad summary ·jurisdiction of the federal bankruptcy courts. This is not a case like *The Isle of*

*Mull,* 4 Cir., 278 F. 131, cert. den., 257 U.S. 662, 42 S.Ct. 270, 66 L.Ed. 423, which involved government requisition of a ship subject to a time charter and in which the court held that the charterer had a cause of action to recover payment by the government to the owner for the use of the ship. Also, it is not like *Venore Transp. Co. v. M/V Struma,* 4 Cir., 583 F.2d 708, which held that a charterer had a claim for loss of use of the chartered vessel following collision with another ship. The admiralty proceeding was not directed at the time charter contract. AI's right to use the ship was not taken or lost. Cases where the bankrupt is the shipowner and a conflict arises between the application of admiralty or bankruptcy law are also not pertinent. AI is a time charterer, not an owner.

Although bankruptcy courts have wide powers, they are courts of limited jurisdiction, and their power to act must be found expressly in the Bankruptcy Act. *First State Bank v. Sand Springs State Bank,* 10 Cir., 528 F.2d 350, 353. The bankruptcy court has exclusive jurisdiction over the debtor and its property wherever located. 11 U.S.C. § 711. Under 11 U.S.C. § 714 and Rule 11–44, the court has power to enter injunctions to protect the property and assets of the bankrupt wherever situated. For property to be within the court's summary jurisdiction, the debtor must have title or possession when the bankruptcy petition is filed. *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876; see also *Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391. AI did not have title to, or possession of, the M/V ASPHALT MERCHANT when the bankruptcy petition was filed. The finding of the bankruptcy court to the contrary is wrong. AI had a time charter, nothing more.

Debtors say that the stay order was violated by interference with two distinct property rights of the debtors, AI's right to use the ship and West Bank's ownership of the cargo. As to the latter, Judge Barrow found that the asphalt aboard the ship belonged to AI. The finding is clearly erroneous. The record is insufficient to establish whether the asphalt was owned by AI, West Bank, or Shell Curacao. In any event, ownership of the cargo is of no pertinence to the contempt proceedings. Because of concern over its possessory lien on the cargo, the shipowner not Cibro, prevented the unloading of the vessel. In his oral decision, Judge Brotman expressly allowed the removal of the cargo. The detention of the cargo by the ship owner cannot support a contempt judgment against Cibro and its lawyers.

The seizure of the ship temporarily affected AI's right to use it. "Affect" is not enough to sustain summary jurisdiction of a bankruptcy court or to justify its use of contempt power. In *Callaway v. Benton,* 336 U.S. 132, 142, 69 S.Ct. 435, 441, 93 L.Ed. 553, the Supreme Court said: " * * * Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate * * *." The fact that a debtor's property may be affected by proceedings under admiralty law does not constitute a "claim" against that "property." Absent such a "claim", summary jurisdiction is unavailable and cannot justify the contempt proceedings with which we are concerned. See *In Re Dolly Madison Industries, Inc.,* 3 Cir., 504 F.2d 499, 503–504.

In its Conclusion of Law # 8, the bankruptcy court held that Cibro "has obtained a preference by its conduct in arresting the S.S. [sic] Asphalt Merchant" and retaining possession of the ship. The holding may not stand. The situation is not like that considered in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391. There the Supreme Court held that a bankruptcy court had summary jurisdiction to order the surrender of a voidable preference asserted by a trustee in response to a proof of claim filed by the creditor who received the preference. Id. 327–340, 86 S.Ct. 467. The record before us does not disclose any proof of claim filed by Cibro against the Debtors or any of them. None of the appellants consented to the summary jurisdiction of the Oklahoma court. The record is unclear as to who is holder of the claim against the Debtors for the fuel furnished by Cibro. Some was furnished before the bankruptcy and some after. The

ship was released upon the agreement to pay, or payment, by Shell Curacao to Cibro in return for the assignment by Cibro to Shell Curacao of its claim against AI. From the record presented we cannot determine who owes what to whom. It is enough to say that in these contempt proceedings we are not concerned with a preference and express no opinion in that regard.

We agree with the New Jersey court that the arrest of the ship did not violate the stay order. The contempt proceedings were no more than an effort to use the contempt powers of the court for the resolution of a civil dispute. Cibro, its officers and attorneys were not guilty of any contempt. This conclusion makes it unnecessary to consider other issues raised by them.

In No. 78–1860 the contempt adjudications are severally set aside and on remand the court shall dismiss the show cause orders. As to No. 78–1916, we recognize that Judge Barrow has died during the pendency of the writ application. Judge Barrow was named respondent in his capacity as Chief Judge of the United States District Court for the Northern District of Oklahoma. Under Rule 43(c)(1), F.R.A.P., the action does not abate and his successor is automatically substituted as a party. H. Dale Cook is now chief judge of the Northern District. It is ordered that he is substituted for Judge Barrow as the respondent. In No. 78–1916 the writ is granted and the district court is directed to dismiss the show cause orders.