**In re CHUGACH FOREST PRODUCTS, INC.; Chugach Timber Corporation, Debtors.**

**CHUGACH TIMBER CORPORATION; Chugach Forest Products, Inc., Appellants,**

v.

**NORTHERN STEVEDORING & HANDLING CORPORATION, Appellee.**

**No. 92–36976.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1994.

Decided April 28, 1994.

Peter W. Giannini, Law Offices of Giannini & Associates, Anchorage, AK, for appellants.

James B. Nebel, Flynn, Delich & Wise, San Francisco, CA, for appellee.

Before: HUG, HALL, and THOMPSON, Circuit Judges.

Opinion by Judge Hall.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Chapter 11 debtors Chugach Timber Corporation and Chugach Forest Products, Inc. appeal a district court order affirming the bankruptcy court's determination that Northern Stevedoring & Handling Corporation did not violate the Bankruptcy Code's automatic stay by foreclosing a maritime lien on a vessel containing property of the debtors. We affirm.

## I.

In February 1991, Chugach Timber Corporation hired Northern Stevedoring & Handling Corporation to load logs and lumber onto the M/V *Hermes Island,* a vessel under charter to Alaska Pacific Trading Company ("Alpac"). Upon completion of the job, Northern Stevedoring billed Chugach $101,-488.94 and, pursuant to the Maritime Lien Act, acquired a lien on the *Hermes Island* for that amount. *See* 46 U.S.C. § 31342. In March 1991, before paying the bill, Chugach and its parent entities (Chugach Alaska Corporation and Chugach Forest Products, Inc.) filed petitions under chapter 11 of the Bankruptcy Code.

Shortly thereafter, Chugach procured a bankruptcy court order allowing it to sell to Alpac a shipment of logs and lumber free and clear of liens. *See* 11 U.S.C. § 363(f). Chugach again hired Northern Stevedoring to load the shipment onto the *Hermes Island,* which was due to return to port in mid-April 1991. On April 10, after receiving a $70,000 advance for this second job, Northern Stevedoring foreclosed the $101,488.94 lien by filing in district court an *in rem* complaint to arrest the *Hermes Island. See* Fed.R.Civ.P. Supp. C. A magistrate judge issued an arrest warrant after *ex parte* review of the complaint, which named only the vessel and made no mention of the Chugach bankruptcy proceedings.

The *Hermes Island* arrived in port on April 14 and, the following morning, Northern Stevedoring began to load Chugach's logs and lumber onto the vessel. At noon, when approximately fifty percent of the lumber and ten percent of the logs were on board, a federal marshal arrived and served the arrest warrant, halting all loading operations. Upon learning of the arrest, Chugach informed Northern Stevedoring that the logs

and lumber on the *Hermes Island* were property of the bankruptcy estate,[1] warned that the arrest violated the automatic stay, and demanded release of the cargo. Northern Stevedoring refused to do so and Chugach sought sanctions for a willful violation of the stay.[2] The bankruptcy court denied Chugach's request and the district court affirmed with a one-paragraph order. Chugach filed a timely appeal.

## II.

Section 362(a) of the Bankruptcy Code embodies the "automatic stay," one of the most important protections of bankruptcy law:

> When a debtor files a bankruptcy petition, an automatic stay immediately arises. The scope of the stay is quite broad. It is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate. The automatic stay plays a vital and fundamental role in bankruptcy. The stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court. The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others.

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 585 (9th Cir.1993) (citations omitted). *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) ["House Report"], *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6296–97. Of specific relevance to the present appeal, § 362(a)(3) provides that a bankruptcy petition "operates as a stay, applicable to all entities, of ... any act to obtain posses-

---

1. Pursuant to the contract between Chugach and Alpac, title to the logs and lumber remained with Chugach until the shipment was fully loaded onto the vessel. As a result, the arrest occurred at the worst possible time. Had the marshal arrived before Northern Stevedoring began to load the *Hermes Island,* Chugach simply could have removed the logs and lumber from the dock. Had the marshal arrived after the loading was complete, title to the shipment would have passed to Alpac and the arrest would not have

affected Chugach's property. As it was, however, the arrest temporarily incapacitated Chugach's use of and control over property to which it still held title.

2. The magistrate later released the *Hermes Island* and its cargo after Alpac posted a letter of credit as security for Northern Stevedoring's claim. Ultimately, Chugach suffered approximately $5,000 in damages from the delay.

sion of property of the estate or of property from the estate or *to exercise control over property of the estate.*" 11 U.S.C. § 362(a)(3) (emphasis added).

■ Chugach argues that the bankruptcy court erred by concluding that Northern Stevedoring did not violate the stay. Specifically, Chugach asserts that Northern Stevedoring exercised control over property of the estate (the logs and lumber on board the *Hermes Island* at the time of the arrest) by foreclosing its lien on the vessel, that Northern Stevedoring's subsequent refusal to release the property independently violated the stay, and that, in any event, "unusual circumstances" enlarge the stay to encompass Alpac and the *Hermes Island.* Chugach therefore contends that Northern Stevedoring willfully violated the stay[3] and requests that we remand in order for the bankruptcy court to exercise its discretion to award damages.[4]

We conduct *de novo* review, *see Hillis Motors,* 997 F.2d at 585, and conclude Northern Stevedoring did not violate the stay.

### A.

■ The bankruptcy court was troubled by the events of this case. Because Northern Stevedoring was a member of Chugach's creditors' committee and should have known that property of the estate might be on the *Hermes Island* at the time of the arrest, the court believed "that there was something that was less than fair, maybe not in the legally wrong sense but sort of in the moral sense," about the stevedore's conduct. Nevertheless, the court concluded that, because Northern Stevedoring filed the foreclosure action only against the *Hermes Island* and

not against Chugach or its property, the stay did not apply:

[T]he intent was always to try to effect a right against the vessel. And although I know some of the circumstances are suspicious, I think that the intent in arresting the vessel was really to get to the vessel and effect a right against that.... The fact that the debtor's cargo was in the vessel, I guess, is almost a fortuitous circumstance, depending on when the Marshal got down there [to the dock]....

[W]hatever problem there is with [the foreclosure], or if there's any rights that the debtor has because of that, are not because of a violation of the automatic stay. [There was] a possible breach of a covenant of good faith and fair dealing to be dealing on the stevedoring contract on one hand while knowing you're going to take the vessel and hold it up on the other. But unfortunately for the debtor, I think that's not enough, in the Ninth Circuit, to create a violation of the automatic stay.

We agree.

On its face, § 362(a)(3) appears broad enough to encompass Northern Stevedoring's conduct. In a sense, the stevedore exercised control over Chugach's property by loading logs and lumber onto the *Hermes Island* with knowledge that an arrest, which it had arranged, was imminent. Closer scrutiny reveals, however, that the statute does not apply to such an indirect exercise of control.

Northern Stevedoring automatically acquired its maritime lien by supplying stevedoring services to the *Hermes Island.* See 46 U.S.C. § 31342; *Farwest Steel Corp. v.*

---

**3.** "A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant...." *Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir.1989) (quotation omitted). It is undisputed that Northern Stevedoring had knowledge of the stay and therefore acted "willfully."

**4.** Chugach initially argued that it was entitled to sanctions as a matter of law under § 362(h) of the Bankruptcy Code, which requires bankruptcy

courts to award damages to "[a]n individual injured by any willful violation of a stay...." 11 U.S.C. § 362(h). As Chugach recognized in its reply brief, however, we recently held that § 362(h) does not apply to corporations. *See Johnston Envtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618–20 (9th Cir.1993).

Nevertheless, bankruptcy courts retain *discretion* to award damages to injured corporate debtors as a sanction for willful violations of the stay. *Id.* at 620. As a result, if Northern Stevedoring did violate § 362(a), a remand would be necessary to give the bankruptcy court the opportunity to exercise that discretion.

*Barge Sea–Span 241,* 769 F.2d 620, 623 (9th Cir.1985). The stevedore therefore had the right to proceed *in rem* directly against the vessel. *See All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu,* 7 F.3d 1427, 1431 (9th Cir.1993) ("Generally, a vessel is viewed as a juristic person, responsible in rem for the acts and omissions of her personnel, separate and distinct from her owner.... [In an *in rem* action,] [t]he owner of a vessel is an interested party, but not a necessary one."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1301, 127 L.Ed.2d 653 (1994); *Alyeska Pipeline Serv. Corp. v. Vessel Bay Ridge,* 703 F.2d 381, 384 (9th Cir.1983) ("In an *in rem* admiralty action brought to enforce a maritime lien pursuant to Rule C, a vessel or other property against which the lien is asserted becomes the *res* or subject matter of the action."), *cert. dismissed,* 467 U.S. 1247, 104 S.Ct. 3526, 82 L.Ed.2d 852 (1984). Thus, absent the presence of Chugach's logs and lumber, Northern Stevedoring's action against the *Hermes Island* was proper.

The automatic stay arising from Chugach's bankruptcy case does not change that result. Congress intended § 362(a)(3) "to prevent dismemberment of the estate" and to enable an "orderly" distribution of the debtor's assets. House Report, *supra* page 243, at 341. *See Hillis Motors,* 997 F.2d at 586 ("A principal purpose of [§ 362(a)(3)] is to preserve property for use in the reorganization of the debtor and to prevent the dismemberment of the estate."). Northern Stevedoring's arrest of the *Hermes Island,* a vessel that was not Chugach's property, did not threaten to dismember the bankruptcy estate or impede the reorganization proceedings. Because the magistrate eventually released the vessel, the foreclosure merely delayed Chugach's expected receipt of cash from the sale of its logs and lumber. Such incidental effect is insufficient to trigger the stay:

> Although ... the scope of subsection 362(a)(3) is [not] precisely limited to instances where a creditor is taking direct action against a *res* in the hands of the debtor, there is no reason to adopt a strained interpretation which ignores legislative purpose.... Thus, while seemingly broad in scope, the automatic stay provisions should be construed no more expansively than is necessary to effectuate legislative purpose.

*Continental Air Lines, Inc. v. Hillblom (In re Continental Air Lines, Inc.),* 61 B.R. 758, 779 (S.D.Tex.1986). *See United States v. Inslaw, Inc. (In re Inslaw, Inc.),* 932 F.2d 1467, 1473 (D.C.Cir.1991) ("The object of the automatic stay provision is essentially to solve a collective action problem—to make sure that creditors do not destroy the bankrupt estate in their scramble for relief. Fulfillment of that purpose cannot require that every party who acts in resistance to the debtor's view of its rights violates § 362(a)....") (citation omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992).

We find support for this conclusion in *Riffe Petroleum Co. v. Cibro Sales Corp.,* 601 F.2d 1385 (10th Cir.1979), a case decided under the former Bankruptcy Act. In *Riffe,* the Tenth Circuit held that a creditor did not violate the bankruptcy stay by foreclosing a maritime lien on a vessel under charter to the debtor. *Id.* at 1389–91. In so holding, the court emphasized that the foreclosure action was directed against the ship (rather than against property of the debtor's estate):

> The admiralty proceeding was not directed at the time charter contract. [The debtor]'s right to use the ship was not taken or lost.... [The debtor] is a time charterer, not an owner.
>
> ....
>
> The seizure of the ship temporarily affected [the debtor]'s right to use it. "Affect" is not enough to ... justify [the bankruptcy court's] use of contempt power.... "Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate...."

*Id.* at 1390 (quoting *Callaway v. Benton,* 336 U.S. 132, 142, 69 S.Ct. 435, 441–442, 93 L.Ed. 553 (1949)). Although *Riffe* is distinguishable because the case arose under the former bankruptcy laws and because the arresting party had not itself placed the debtor's property on the vessel, the analysis is still relevant. The stay in *Riffe* prohibited all persons "from directly or indirectly doing any

act that would interfere in any way with the possession or management of any of the Debtor's property." *Id.* at 1389. This language is comparable to § 362(a)(3)'s "exercise control" phraseology and, as a result, we think *Riffe* applies to this case.

We hold that Northern Stevedoring did not "exercise control" over Chugach's property and thus did not violate § 362(a)(3) by foreclosing its maritime lien on the *Hermes Island.*

### B.

■ Chugach argues that, even if Northern Stevedoring was within its rights by arresting the *Hermes Island,* the stevedore nevertheless violated the automatic stay by refusing to release the logs and lumber after Chugach demanded that it do so. Without doubt, "a creditor's knowing retention of property of the estate constitutes a violation of" § 362(a)(3). *Abrams v. Southwest Leasing & Rental, Inc. (In re Abrams),* 127 B.R. 239, 242 (9th Cir. BAP 1991). *Accord Knaus v. Concordia Lumber Co. (In re Knaus),* 889 F.2d 773, 775 (8th Cir.1989) ("The failure to [return property to the debtor], regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay."). In this case, however, Chugach neglects to mention a vital point: Once the marshal served the arrest warrant, Northern Stevedoring had no ability to release the logs and lumber even if it had desired to do so.

The magistrate specifically denied Northern Stevedoring's request to continue performing cargo operations on the *Hermes Island* while the vessel was under arrest. As a result, the only legal way to remove Chugach's logs and lumber from the vessel would have been to procure a court order permitting such action. *See* 9th Cir., Dist. Alaska, Admiralty R. 9(B). Northern Stevedoring cannot have willfully failed to return property that it was legally unable to remove. We conclude, therefore, that the stevedore did not violate § 362(a)(3) by retaining Chugach's property.

### C.

■ Chugach lastly argues that, even if § 362(a)(3) would not normally encompass Northern Stevedoring's conduct, "unusual circumstances" in this case extend the stay's protections to Alpac and the *Hermes Island.* We disagree.

■ As a general rule, "[t]he automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate. It does not protect non-debtor parties or their property. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor." *Advanced Ribbons & Office Prods. v. U.S. Interstate Distrib. (In re Advanced Ribbons & Office Prods.),* 125 B.R. 259, 263 (Bankr. 9th Cir.1991) (citations omitted) (foreclosure on stock pledged as security for debtor's liability does not violate the stay). *See, e.g., United States v. Dos Cabezas Corp.,* 995 F.2d 1486, 1491–94 (9th Cir.1993) (creditor may sue nonbankrupt cosigners of promissory note); *O'Malley Lumber Co. v. Lockard (In re Lockard),* 884 F.2d 1171, 1176–79 (9th Cir.1989) (creditor may sue nonbankrupt surety); *Ingersoll–Rand Fin. Corp. v. Miller Mining Co.,* 817 F.2d 1424, 1427 (9th Cir. 1987) (creditor may sue nonbankrupt guarantor).

Chugach, however, seeks to invoke the "unusual circumstances" exception to this rule. This exception arose in *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.),* 788 F.2d 994 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), in which the Fourth Circuit upheld the district court's issuance of an injunction restraining prosecution of asbestos lawsuits against the debtor's nonbankrupt codefendants. According to the court, "unusual circumstances" justified an extension of the stay:

> [I]n order for relief for such non-bankrupt defendants to be available under [§ 362(a) ], there must be "unusual circumstances".... This "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party

defendant will in effect be a judgment or finding against the debtor.

*Id.* at 999. *See, e.g., S.I. Acquisition, Inc. v. Eastway Delivery Serv. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1147–50 (5th Cir. 1987) (applying the exception to stay creditor's action against nonbankrupt officers of the debtor).

In the Ninth Circuit, the vitality of the "unusual circumstances" exception is not clear. We have declined to apply *A.H. Robins* on two occasions. In *Lockard*, we noted that "[w]e have not explicitly recognized such an exception, and we decline to do so in this case." *Lockard*, 884 F.2d at 1179. More recently, in *Dos Cabezas*, we refused to adopt the exception, noting that the parties had not raised the issue in the lower courts. *Dos Cabezas*, 995 F.2d at 1492–93 n. 3.[5] Because the exception would not apply to this case even if it were valid under other circumstances, we again postpone resolution of the issue until another day.

As noted above, the *Hermes Island* is independently liable for Northern Stevedoring's services. Where a nondebtor "has obligations that are 'independent' and primary, not derivative of those of the debtor[,] ... the *A.H. Robins* exception simply does not apply." *Lockard*, 884 F.2d at 1179 (citation omitted). Moreover, the foreclosure might actually have facilitated Chugach's reorganization by allowing Northern Stevedoring to satisfy its claim against Chugach with the assets of Alpac and the *Hermes Island*, thereby preserving funds for other creditors.

As a result, "[e]xtending the stay ... would not advance the aims of the bankruptcy scheme: it would neither promote reorganization nor protect [Chugach]'s other creditors." *Dos Cabezas*, 995 F.2d at 1492.[6]

Thus, "unusual circumstances" do not justify extending the stay in this case.

### III.

The bankruptcy and district courts correctly held that Northern Stevedoring did not violate the automatic stay by foreclosing a maritime lien on the *Hermes Island* even though the vessel contained Chugach's property. The foreclosure did not threaten to dismember the bankruptcy estate or impede an orderly distribution of the debtor's assets. Northern Stevedoring had no ability to release Chugach's logs and lumber once the marshal arrested the vessel. And, finally, no "unusual circumstances" justify extending the stay to protect nondebtors Alpac and the *Hermes Island*.

**AFFIRMED.**

---

5. Two bankruptcy courts in the Ninth Circuit have, however, applied the "unusual circumstances" exception. *See Circle K Corp. v. Marks (In re Circle K Corp.)*, 121 B.R. 257, 261 (Bankr. D.Ariz.1990) (staying litigation against officers of the debtor); *Maxicare Health Plans, Inc. v. Centinela Mammoth Hospital (In re Family Health Servs.)*, 105 B.R. 937, 942 (Bankr.C.D.Cal.1989) (staying litigation against nondebtor members of debtor health maintenance organizations).

6. Even if the "unusual circumstances" rationale was applicable, Chugach would have an additional, insurmountable problem. As the Sixth Circuit recently noted after surveying cases that have applied the *A.H. Robins* exception, "such extensions, although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate.... Even if we were to adopt the unusual circumstances test, the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction...." *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir.1993). *See Advanced Ribbons*, 125 B.R. at 266 (noting that *A.H. Robins* "blended its analysis of section 362 with its analysis of its injunctive powers under section 105").

The proceedings in this case, of course, are entirely retrospective. Chugach never requested that the bankruptcy court stay Northern Stevedoring's foreclosure. Because Chugach's subsequent request for damages is not analogous to the prospective requests for an injunction found in typical "unusual circumstances" cases, we think application of the exception is particularly inappropriate in this case.