98 F.3d 1147
 65 USLW 2290, 36 Collier Bankr.Cas.2d 1658,
36 Fed.R.Serv.3d 512, 29 Bankr.Ct.Dec. 1155,
Bankr. L. Rep. P 77,176,
96 Cal. Daily Op. Serv. 7789,
96 Daily Journal D.A.R. 12,877
 In re DEL MISSION LIMITED, Debtor.
STATE OF CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT;
State of California State Board of Equalization, Appellants,
v.
Harold S. TAXEL, Trustee for Del Mission Limited, Appellee.
 No. 95-55658.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 9, 1996.
Decided Oct. 23, 1996.
 
 Richard W. Bakke, Deputy Attorney General, Los Angeles, CA, for appellants.
 Jeffry A. Davis, Gray, Cary, Ware & Freidenrich, San Diego, CA, for appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel, Jones, Hagan and. BAP No. SC-94-1191-JhR.
 Before: FLETCHER and TASHIMA, Circuit Judges, and RESTANI, Court of International Trade Judge.*
 TASHIMA, Circuit Judge:
 
 
 1
 This appeal presents two important issues. First, we consider whether failing to return bankruptcy estate property in a timely manner constitutes a violation of the automatic stay provision of 11 U.S.C. § 362(a)(3). We conclude that it does. Next, we resolve whether a bankruptcy court may award fees and costs incurred in prior appellate proceedings as a contempt sanction under 11 U.S.C. § 105(a). We conclude that it may not.
 
 BACKGROUND
 
 2
 This is the second round of litigation between these parties. The first round arose when appellants California Employment Development Department and State Board of Equalization (collectively the "State") refused to approve the sale of Chapter 7 debtor Del Mission Limited's ("Del Mission") liquor license until it paid all outstanding taxes and interest accrued thereon. The trustee of Del Mission, appellee Harold S. Taxel ("Taxel"), paid the disputed taxes under protest, and then brought a proceeding in the bankruptcy court seeking repayment. The bankruptcy court found that the State's action violated the automatic stay provision of 11 U.S.C. § 362(a)(3), and ordered the State to pay Del Mission $15,604.[1] Taxel v. California Employment Dev. Dep't (In re Del Mission Ltd.), 116 B.R. 734 (Bankr.S.D.Cal.1990) ("Del Mission I "), aff'd, 130 B.R. 362, 1991 WL 169078 (9th Cir. BAP 1991) (TABLE in Westlaw) ("Del Mission II "), aff'd, 998 F.2d 756 (9th Cir.1993) ("Del Mission III ").
 
 
 3
 The failure of the State to repay the disputed taxes in a timely manner is the subject of this second round of litigation. In spite of the bankruptcy court's order, the State did not repay the disputed taxes while the underlying case was being appealed. Following our decision in Del Mission III, Taxel filed a motion with the bankruptcy court seeking to hold the State in civil contempt of the automatic stay for failing to repay the disputed taxes in a timely manner.[2] As sanctions, Taxel requested attorney's fees and costs incurred in enforcing the automatic stay on appeal in Del Mission II and Del Mission III. The bankruptcy court denied the motion, concluding that the automatic stay violation merged into the previously awarded money judgment. As an alternative ground for its decision, the court also concluded that it had no legal authority to award fees incurred on prior appeals. The bankruptcy appellate panel ("BAP") reversed on both issues, and awarded Taxel the fees and costs he incurred in Del Mission II and Del Mission III, on the prior appeals.[3]
 
 
 4
 We have jurisdiction of this appeal under 28 U.S.C. § 158(d), and we affirm in part and reverse in part.
 
 DISCUSSION
 
 5
 I. Continuing Violation of the Automatic Stay
 
 
 6
 The first issue we must decide is whether the State's failure to repay Del Mission in a timely manner constituted a continuing violation of 11 U.S.C. § 362(a)(3). "Because we are in as good a position as the BAP to examine the decision of the bankruptcy court, we independently review the bankruptcy court's ruling." Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir.1995) (citation omitted). We review de novo whether the automatic stay provision of § 362(a) has been violated. Chugach Timber Corp. v. Northern Stevedoring & Handling Corp. (In re Chugach Forest Prod., Inc.), 23 F.3d 241, 244 (9th Cir.1994). We conclude that the State's retention of the disputed taxes did violate the automatic stay.
 
 A. The Merger Doctrine
 
 7
 The doctrine of merger is a subset of res judicata and precludes a plaintiff from maintaining an action on the original claim after a final judgment has been entered. Restatement (Second) of Judgments § 18 (1980). The bankruptcy court reasoned that under this doctrine, the State's violation of the automatic stay ended with a final judgment in Taxel's favor. When judgment was entered, the violation of the stay ceased to exist and all remaining rights between the parties merged into the money judgment. It therefore rejected Taxel's motion for contempt, concluding that the State's retention of the disputed taxes could not, under the doctrine of merger, be a continuing violation of the automatic stay. We decline the State's invitation to adopt the reasoning of the bankruptcy court.
 
 
 8
 The bankruptcy court's analysis stretches the doctrine of merger beyond its intended limits. The doctrine of merger does not extinguish "advantages to which the plaintiff was entitled with respect to the original claim...." Id. at § 18, cmt. g. For example, "if a creditor has a lien upon property of the debtor and obtains a judgment against him, the creditor does not thereby lose the benefit of the lien." Id.
 
 
 9
 In the case at bench, the automatic stay, "an advantage[ ] to which the plaintiff was entitled with respect to the original claim," id., remains effective until the bankruptcy estate terminates. See 11 U.S.C. § 362(c). Accordingly, until such time as the Del Mission estate terminates, the State is obligated to abide by the automatic stay. Thus, the doctrine of merger does not immunize the State from future violations of the stay, even though it has been found liable for past violations of the stay. Cf., Harkins Amusement Enter. Inc. v. Harry Nace Co., 890 F.2d 181 (9th Cir.1989) (holding in an antitrust suit that res judicata did not bar second lawsuit because the alleged violations occurred during a different time period). The bankruptcy court therefore erred in concluding that, under the doctrine of merger, the State's retention of the disputed taxes could not be in violation of the stay.
 
 B. Retention of the Disputed Taxes
 
 10
 Given the continuing viability of the automatic stay, we must next consider whether the State did, in fact, violate the automatic stay by retaining the disputed taxes. 11 U.S.C. § 362(a)(3) specifically enjoins "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate...." In Del Mission III, we concluded that the State's efforts to collect the disputed taxes in the first instance did constitute a violation of the stay under subsection (3). 998 F.2d at 758.[4] Now, we take the analysis one step further, and determine whether the State's continued retention of the disputed taxes was an "act ... to exercise control over the property of the estate," in continuing violation of the automatic stay. 11 U.S.C. § 362(a)(3).
 
 
 11
 The "exercise control" clause of § 362(a)(3) was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98-353, 1984 U.S.C.C.A.N. (98 Stat.) 371. Congress did not provide an explanation of that amendment. In re Young, 193 B.R. 620, 623 (Bankr.D.C.1996). The Ninth Circuit BAP has interpreted this amendment as broadening the scope of § 362(a)(3) to proscribe the mere knowing retention of estate property. Abrams v. Southwest Leasing & Rental Inc. (In re Abrams), 127 B.R. 239, 241-43 (9th Cir. BAP 1991) (failure to return repossessed car after receiving notice of Chapter 7 filing constituted a violation of the automatic stay). In dicta, this circuit has accepted that interpretation. Chugach, 23 F.3d at 246. We now adopt the reasoning of Abrams and Chugach, and hold that the knowing retention of estate property violates the automatic stay of § 362(a)(3).
 
 
 12
 11 U.S.C. § 542(a) provides that an entity in possession of estate property "shall" deliver such property to the trustee. This is a mandatory duty arising upon the filing of the bankruptcy petition. Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 775 (8th Cir.1989). Thus, "[w]ithout doubt, 'a creditor's knowing retention of property of the estate constitutes a violation of' § 362(a)(3)." Chugach 23 F.3d at 246 (quoting Abrams, 127 B.R. at 242); accord Knaus, 889 F.2d at 775 ("The failure to [turn over], regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay."); Carlsen v. IRS (In re Carlsen), 63 B.R. 706, 711 (Bankr.C.D.Cal.1986) (failure of IRS to return funds received pursuant to a levy after receiving notice violated automatic stay).
 
 
 13
 These cases emphasize the underlying purpose of the automatic stay, which is to alleviate the financial strains on the debtor. See, e.g., Knaus, 889 F.2d at 775; see also Utah State Credit Union v. Skinner (In re Skinner), 90 B.R. 470 (D.Utah 1988), aff'd, 917 F.2d 444 (10th Cir.1990). To effectuate the purpose of the automatic stay, the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor. Abrams, 127 B.R. at 243.
 
 
 14
 [I]f persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly reduced.
 
 
 15
 Knaus, 889 F.2d at 775. Moreover, "the case law and the legislative history of § 362 indicate that Congress did not intend to place the burden on the bankruptcy estate to absorb the expense of potentially multiple turnover actions, at least not without providing a means to recover damages sustained as a consequence thereof." Abrams, 127 B.R. at 243.
 
 
 16
 Under this line of authority, we conclude that the State's knowing retention of the disputed taxes violated the automatic stay. As this case shows, the potential for multiple actions to obtain what is rightfully due to a bankruptcy estate is a very real concern. The State contends that it did not repay Del Mission in a timely manner because Taxel did not make any specific demand on it. As noted by the BAP, "[t]his argument is frivolous." BAP Dec. at 7. In Del Mission I, the bankruptcy court specifically held that Del Mission was entitled to a refund of the disputed taxes. 116 B.R. at 739. Moreover, the State cites no support for its contention that no obligation to repay arose until it received a specific request from the trustee. That contention is in direct conflict with Abrams and Chugach.
 
 
 17
 In summary, both the case law and policy considerations compel the conclusion that the State violated the automatic stay by knowingly retaining the disputed taxes, following the bankruptcy court's order to repay Del Mission.
 
 
 18
 II. The Scope of a Bankruptcy Court's Contempt Power under 11 U.S.C. § 105(a)[5]
 
 
 19
 Although the State violated the automatic stay, whether that violation authorized the BAP to award Taxel previously incurred appellate fees presents another question entirely. A bankruptcy court's award of attorney's fees is reviewed for an abuse of discretion or an erroneous application of the law. Feder v. Lazar (In re Lazar), 83 F.3d 306, 308 (9th Cir.1996). In the absence of direct authority, we apply this same standard of review to the BAP's award of fees. Upon review, we conclude that the BAP's award of fees was erroneous because § 105(a) does not authorize an award of previously incurred appellate fees as a sanction.[6]
 
 
 20
 Typically, damages for a violation of the automatic stay are recovered under 11 U.S.C. § 362(h). This section mandates the award of actual damages to "[a]n individual injured by any willful violation of a stay provided by this section." Id. (emphasis added). A trustee, as the representative of a legal entity (the bankruptcy estate), is not an "individual" within the meaning of § 362(h), and therefore cannot recover under this statute. Pace, 67 F.3d at 192.
 
 
 21
 Notwithstanding § 362(h)'s inapplicability, a bankruptcy court may award damages to a trustee for a violation of the automatic stay under its contempt power pursuant to 11 U.S.C. § 105(a). Pace, 67 F.3d at 193. Section 105(a) provides that a bankruptcy court "may issue any order ... that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This provision is broad enough to provide relief to those entities that are injured by willful violations of the automatic stay, but cannot recover under § 362(h). Pace, 67 F.3d at 193; United States v. Arkison (In re Cascade Rds., Inc.), 34 F.3d 756, 767 (9th Cir.1994). The only meaningful difference between awarding damages under § 362(h), as opposed to § 105(a), is that relief under § 362(h) is mandatory, while relief under § 105(a) is discretionary. Pace, 67 F.3d at 193-94. However, this does not answer the question of whether § 105(a) authorizes a court to award previously incurred appellate fees. We now turn to that issue of first impression.
 
 
 22
 The bankruptcy court concluded that it could not award fees for appellate representation under Vasseli v. Wells Fargo Bank (In re Vasseli), 5 F.3d 351 (9th Cir.1993), which holds that a bankruptcy court has no authority to award appellate attorney's fees under 11 U.S.C. § 523(d). The BAP, however, concluded that Vasseli did not foreclose an award of previously incurred appellate fees under a bankruptcy court's contempt power. We agree with the bankruptcy court and conclude, under the reasoning of Vasseli, that § 105(a) does not authorize an award of appellate fees.
 
 
 23
 In Vasseli, Chapter 7 debtors successfully defended a motion brought by a creditor under 11 U.S.C. § 523(a), to determine the dischargeability of a consumer debt. 5 F.3d at 352. The bankruptcy court awarded attorney's fees as provided under § 523(d). Id. The creditor's appeal to the district court was dismissed as untimely. Id. at 353. The debtors then returned to the bankruptcy court and, invoking § 523(d), requested additional attorney's fees incurred in the appeal to the district court. Id.
 
 
 24
 Relying on Fed.R.App.P. 38, we held that a bankruptcy court does not have the authority to award attorney's fees incurred in response to a frivolous appeal under § 523(d). Id. Vasseli further held that Rule 38 is the only authority for awarding appellate fees incurred as a result of a frivolous appeal. Id. We agreed with the BAP's holding that "Rule 38 empowers only appellate courts, not bankruptcy courts to award damages, attorney's fees, and other expenses incurred by an appellee in response to a frivolous appeal." Id. (emphasis added). Moreover, Vasseli held that an appellate court does not have the authority to delegate this power to a bankruptcy court. Id. Thus, Vasseli concluded that the debtors "should have applied to the district court, not the bankruptcy court, for costs incurred on their appeal pursuant to Rule 38." Id. at 354.
 
 
 25
 In the instant case, the BAP distinguished Vasseli by concluding that the plain language of § 523(d) precludes an award of appellate fees. § 523(d) provides:
 
 
 26
 [i]f a creditor requests a determination of dischargeability of a consumer debt ..., and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified....
 
 
 27
 11 U.S.C. § 523(d) (emphasis added). The BAP found the emphasized phrase to be "limiting language" precluding an award of appellate fees. BAP Dec. at 11. The BAP then noted that it was not constrained by such limiting language under the stay violation provisions, and therefore was not precluded from awarding previously incurred appellate fees.
 
 
 28
 While the BAP's construction of § 523(d)'s "limiting language" may be correct--that is, the language itself may preclude an award of appellate fees--that was not the basis relied upon by Vasseli to conclude that a bankruptcy court lacked the authority to award appellate fees. As mentioned above, Vasseli relied entirely upon Rule 38, and construed Rule 38 as the only authority that provides for appellate fees for frivolous appeals. See Vasseli, 5 F.3d at 354. Accordingly, while the BAP's attempt to distinguish Vasseli may have some surface appeal, it nevertheless must fail because there is no basis for the BAP's conclusion that Vasseli 's holding is based on the "limiting language" of § 523(d).
 
 
 29
 We thus conclude that Vasseli is indistinguishable in principle from the instant case, and controls its outcome. Vasseli rejected the idea that a court's express discretionary authority to award fees at the trial level implied an authority to award fees at the appellate level. See Vasseli, 5 F.3d at 353 (refusing to "read into" § 523(d) the authority to award appellate fees). Here, § 105(a) has been construed as a vehicle to award discretionary fees at the trial court level. Pace, 67 F.3d at 193. Vasseli instructs that we should not imply from that limited grant of authority a similar authority to award fees at the appellate level.
 
 
 30
 Moreover, because an award under § 105(a) is discretionary, its use as a device to award previously incurred appellate fees would overlap with Rule 38. Under either authority, a court would be required to consider the merits of the arguments advanced and the manner in which the parties acted in determining whether to award fees. Given that Rule 38 already provides for a discretionary award of fees in frivolous appeals, it would be superfluous to treat § 105(a) as another vehicle to award appellate fees. In accord with Vasseli, we therefore hold that the only authority for awarding discretionary appellate fees in bankruptcy appeals is Rule 38.[7] Accordingly, the bankruptcy court did not err in refusing to award Taxel previously incurred appellate fees.[8]
 
 
 31
 We therefore reverse the BAP's award to Taxel of previously incurred appellate fees.[9]
 
 III. Attorney's Fees for this Appeal
 
 32
 In his responding brief, Taxel includes a motion for attorney's fees incurred while defending this current appeal, under both § 105(a) and Rule 38. As we have concluded § 105(a) does not authorize appellate fees, we consider only the request made under Rule 38.
 
 
 33
 The 1994 Amendment to Rule 38 permits an award of fees only "after a separately filed motion or notice from the court and reasonable opportunity to respond[.]" Fed.R.App.P. 38 (1994). Taxel has not filed such a separate motion. A request made in an appellate brief does not satisfy Rule 38. See Gabor v. Frazer, 78 F.3d 459, 459-60 (9th Cir.1996) (denying Rule 38 motion without prejudice, and allowing the requesting party to file a separate fee motion).
 
 
 34
 In this case, we do not deem it appropriate to deny the motion without prejudice and allow Taxel to file a separate motion. Given that the BAP's fee award was erroneous, the State's appeal was clearly not frivolous. Accordingly, because any separately-filed Rule 38 motion would be denied, permitting Taxel to file such a motion would be futile.
 
 CONCLUSION
 
 35
 The BAP correctly concluded that the State's retention of the disputed taxes violated the automatic stay provisions of 11 U.S.C. § 362(a)(3). However, it erred in concluding that 11 U.S.C. § 105(a) authorizes an award of previously incurred appellate fees. The BAP's award of such fees to Taxel is therefore reversed.
 
 
 36
 AFFIRMED in part and REVERSED in part. Each party shall bear its or his own costs on appeal. Taxel's motion for fees on appeal is denied.
 
 
 
 *
 The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 In a separate order, the bankruptcy court also awarded sanctions against the State equal to the amount of Del Mission's attorney's fees incurred in the bankruptcy court. That order is not at issue in this appeal
 
 
 [2]
 Soon after Taxel filed the motion for contempt, the State repaid the disputed taxes
 
 
 [3]
 Hereinafter these fees and costs shall be referred to as "previously incurred appellate fees."
 
 
 [4]
 Del Mission III also held that the State's actions violated subsection 6 of § 362(a). 998 F.2d at 758. Subsection 6 enjoins "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. § 362(a)(6)
 
 
 [5]
 Although the BAP did not cite to § 105(a), it is the authority that authorizes a bankruptcy court to award sanctions for ordinary civil contempt. Pace, 67 F.3d at 193
 
 
 [6]
 Sanctions cannot be issued against the State unless it has waived sovereign immunity. At the time the State filed a claim for the underlying disputed taxes, a governmental unit waived its sovereign immunity by filing a proof of claim against the bankruptcy estate. 11 U.S.C. § 106(a) (1993). This waiver is effective for claims arising out of the same transaction or occurrence brought in response to the claims filed by the government. Id. Accordingly, the state has waived its sovereign immunity in the instant case
 We note that the 1994 Amendments to 11 U.S.C. § 106(a) specifically abrogate sovereign immunity for cases arising under §§ 105 and 362. See Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, § 113, 1994 U.S.C.C.A.N. (108 Stat.) 4106, 4117-18. We further note that there are potential constitutional problems with these amendments. See Ohio Agric. Commodity Depositors Fund v. Mahern, --- U.S. ----, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996) (summarily vacating and remanding Seventh Circuit decision upholding constitutionality of the 1994 Amendments in light of Seminole Tribe v. Florida, --- U.S. ----, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). In the case at bench, we need not consider the constitutionality of the 1994 Amendments because it is clear that the State waived sovereign immunity under pre-amendment law.
 
 
 [7]
 Our holding is limited to awards of discretionary appellate fees in bankruptcy proceedings. We do not consider whether some bankruptcy statutes, such as § 362(h), may provide for a mandatory award of appellate fees
 
 
 [8]
 Moreover, we note that even if § 105(a) did authorize an award of previously incurred appellate fees, we would still be compelled to vacate the BAP's award. Because awarding sanctions under § 105(a) is a discretionary function of the bankruptcy court, an appellate court may not impose contempt sanctions under § 105(a) based on its assumption of what a bankruptcy court would do on remand. See Pace, 67 F.3d at 193-94 (although bankruptcy court expressed great displeasure with stay violator, BAP's imposition of sanctions was vacated so that the bankruptcy court could determine what sanctions, if any, to impose); see also Cascade Rds., 34 F.3d 756, 766-67 (9th Cir.1994) (remanding so bankruptcy court could decide whether to award fees in its discretion); Johnston Envtl. Corp. v. Knight, (In re Goodman), 991 F.2d 613, 620 (9th Cir.1993) (same)
 
 
 [9]
 Because the award must be vacated, it is unnecessary for us to address the State's argument that the amount of the award was excessive