### In re M & J FEED MILL, INC., Debtor.

### Bankruptcy No. 89–60007–S.

United States Bankruptcy Court, W.D. Missouri.

April 11, 1990.

---

James R. Doran, Springfield, Mo., for debtor, M & J Feed Mill, Inc.

J. Kevin Checkett, Carthage, Mo., for trustee.

Richard D. Bender, Springfield, Mo., for Southwest Village Water Co.

## ORDER GRANTING TRUSTEE'S APPLICATION FOR DAMAGES FOR VIOLATION OF AUTOMATIC STAY

KAREN M. SEE, Bankruptcy Judge.

On April 3, 1990 a hearing was conducted on the Chapter 7 trustee's motion for contempt for violation of the automatic stay. Debtor M & J Feed Mill, Inc. appeared by its president Paul O. Johnson and attorney James Doran; respondent Southwest Village Water Company appeared by its secretary Paul O. Johnson and attorney Richard Bender; respondent Paul O. Johnson and trustee J. Kevin Checkett appeared in person.

The court finds this is a core proceeding, sustains the trustee's motion and enters the following findings of fact and conclusions of law.

This bankruptcy case was filed by debtor M & J Feed Mill as a Chapter 11 on January 18, 1989. On September 15, 1989, the proceeding was converted to Chapter 7 and J. Kevin Checkett was appointed trustee.

The trustee filed a motion alleging violation of the automatic stay and requesting actual and punitive damages from both Paul Johnson, president of debtor, and creditor Southwest Village Water Company, a corporation in which Mr. Johnson is secretary. Both the debtor and creditor corporations are controlled by Mr. Johnson. Thus, Mr. Johnson and Southwest Village are insiders of debtor. Southwest Village is listed as a secured creditor with a second deed of trust securing a $1.6 million wrap note on the Downing Street Apartments which are the subject of this dispute.

Paul Johnson is president of debtor M & J Feed Mill, Inc. and secretary of South-

west Village Water Company. Mr. Johnson has testified in this proceeding and in others that he is a developer and is connected with various interrelated "Johnson companies." Paul Johnson serves from time to time as shareholder, officer, director and consultant with various corporations including debtor M & J Feed Mill, Inc., creditor/respondent Southwest Village Water Company, New Concepts Housing, Inc. (which is also in a bankruptcy proceeding in this court), and Southwest Times, Inc. Paul Johnson directs and controls these corporations or causes various family members, specifically his wife and children, to serve in his stead in these same corporations, so that he may control the corporations through the family members who act at his direction.

On January 31, 1990, the trustee filed an application to sell the Downing Street Apartments free and clear of liens. All parties in interest were served, including Paul Johnson and Southwest Village Water Company. By order dated March 1, 1990, the trustee's application for sale was granted for reasons including that the premises were in extremely dangerous condition, under condemnation, and posed a substantial and uninsured risk to the estate.

There was a first deed of trust on the property in the amount of $400,000 to $450,000 to Farm and Home Savings. Farm and Home consented to the sale by the trustee to the City of Springfield. Southwest Village Water Company claims a second deed of trust in the form of a wrap-around note for $1.6 million. There is no evidence that any funds were actually advanced or other consideration was given equal to the amount of the note.

Paul Johnson had actual notice of the application to sell the Downing Street Apartments free and clear of liens and of the order of this court dated March 1, 1990. Debtor M & J Feed Mill, with the knowledge of and at the direction of Paul Johnson, objected to sale of the Downing Street Apartments as proposed by the trustee. Similarly, Southwest Village Water Company, with the knowledge of and at the direction of Paul Johnson, also objected to the sale.

## MECHANIC'S LIEN

On March 1, 1990, a hearing was held on the application to sell the property free and clear of liens and the objections filed by Johnson's companies, i.e. debtor M & J Feed Mill and creditor Southwest Village Water Company. At that hearing, no mention was made of a possible additional lien claimed or expected to be filed by Southwest Village Water Company for services or materials provided M & J Feed Mill, Inc. pre-petition or post-petition.

Promptly after entry of the order for sale on March 1, on March 6, 1990, Paul Johnson filed with the Greene County Circuit Clerk a mechanic's lien which was signed under oath by Paul Johnson and which stated that Southwest Village had provided to M & J Feed Mill labor and services in the amount of $47,400 within the preceding six months. It is important to note that during the preceding six months, the trustee had been in possession of the property except for one week prior to his appointment on September 15, 1989, and the trustee had not authorized any work by Mr. Johnson or any of his companies.

Apparently, no notice of the lien was served by Mr. Johnson on the trustee. The existence of the lien turned up during title work preceding the sale and resulted in the trustee having to file on March 14, 1990 an application to amend order of sale to declare the mechanic's lien null and void.

At the hearing on the motion for damages for violation of the automatic stay, Mr. Johnson testified Southwest Village Water Company, with his knowledge and consent, provided work for M & J Feed Mill both before and after the trustee was appointed. Mr. Johnson stated there was no written contract for the work purportedly provided by Southwest Village Water Company for M & J Feed Mill. He did not say the work was authorized by the trustee.

Mr. Johnson further testified that in fact the amount claimed in the mechanic's lien was part of the $1.6 million claimed by

Southwest Village Water Company pursuant to its note and second deed of trust. Mr. Johnson stated that one reason he filed the lien was to make sure Southwest Village got paid something on its undersecured note and second deed of trust.

Upon further questioning, Mr. Johnson said part of the work was performed in the six months prior to filing of the mechanic's lien, but that part of it was performed in 1988 and 1989, long before the bankruptcy case was filed and also well outside the six month time period referenced in the mechanic's lien statement. In the affirmation signed under oath on the lien, Mr. Johnson stated that all work and materials covered by the lien were provided within the previous six months.

Mr. Johnson testified that he had records of materials, labor and services, but he did not bring them with him to the hearing, despite the fact that the trustee was seeking a contempt citation and damages. He also failed to produce the individual contractor who he suggested may have provided part of these materials and labor. The court finds this testimony to be without credibility. Mr. Johnson also testified that some records were destroyed in a fire. The court finds this excuse to be all too convenient and without credibility. The only documents submitted by Mr. Johnson were miscellaneous insurance claims documents which are not helpful to respondents' defense and do not show that any materials or labor were provided to the Downing Street Apartments at any time. There is no credible evidence that Southwest Village performed any work at the Downing Street Apartments pre-petition or post-petition.

The court finds that no work or labor was provided within the six months prior to filing of the lien, during which time the trustee was in possession of the property. The court further finds that Mr. Johnson knew no labor or materials (and certainly not $47,400 worth) were provided within the six months prior to filing of the lien.

As to the possibility of falsehood in the affirmation that all materials and services were provided in the last six months, Mr. Johnson testified he did not understand the plain language of the lien form, particularly the affirmation and acknowledgment. Paul Johnson, as a developer and contractor, must necessarily have some understanding of the basic principles of mechanic's liens. Mr. Johnson said he thought that if any item of labor or goods was provided within the six month period, it would cause the lien to relate back to cover any labor or materials provided at any time whatsoever in years past. Mr. Johnson's explanation is not credible and the court finds he had to know the facts alleged in the lien form were substantially untrue. The lien form was signed by Paul Johnson, under oath, but was not truthfully made.

Even if Mr. Johnson thought the lien extended indefinitely to cover all work and labor provided sporadically over many years if any item had been contributed within six months, Mr. Johnson's explanation does not stand up to scrutiny because there is no evidence whatsoever that he or his corporation provided any labor or goods within six months. All the credible evidence and lack of evidence in the record point to the contrary conclusions that in the six months no work was authorized by the trustee, no labor or materials were provided by Johnson's corporation on the property, and Mr. Johnson knew no such services or goods were provided.

There is no basis in law or fact for a mechanic's lien in favor of Southwest Village Water Company against Downing Street Apartments either post- or pre-petition. Any potential lien for improvements prior to the bankruptcy, dating back to 1988, lapsed long ago under Missouri mechanic's lien statute § 429.080 RSMo.

## VIOLATION OF AUTOMATIC STAY

■ Mr. Johnson and his various companies have legal counsel and he has access to legal counsel on a regular basis. Two of Mr. Johnson's companies are currently debtors in bankruptcy proceedings and others have participated as creditors. Mr. Johnson has appeared before this court often during bankruptcy proceedings. He is generally familiar with the bankruptcy system and the basic premise that pre-petition

creditors of his bankrupt companies cannot attempt to enforce their claims outside bankruptcy court without lifting of the automatic stay. When Mr. Johnson and his companies appear as creditors, they must be held to the same standard as other creditors, even though the debtor is also a Johnson-related company.

Paul Johnson claims that part of the $47,400 mechanic's lien is for goods and services dating back to the 1988, prior to the date the bankruptcy proceeding was filed on January 18, 1989. The filing by Mr. Johnson of the mechanic's lien for such goods and services allegedly provided pre-petition is a violation of the automatic stay of § 362(a)(3), (4), and (5).

■ The trustee spent in excess of 10 hours handling the obstacle of the mechanic's lien. He had to file by express mail an application for an amended order of sale on March 14, 1990; he also expended several hours on the pleadings and hearing for the instant motion concerning violation of the stay. The bankruptcy estate of M & J Feed Mill, Inc. has been damaged in the sum of $1,100.00 representing 10 hours of legal services provided by the trustee at the rate of $100 per hour, which the court finds to be reasonable, and for miscellaneous costs and expenses incurred by the trustee in the sum of an additional $100. Pursuant to § 362(h), actual damages of $1,100 are awarded against Paul O. Johnson and Southwest Village Water Company, payable to Esterly & Checkett for services rendered on behalf of the estate.

## PUNITIVE DAMAGES

■ Paul Johnson knew the nature and extent of his actions in filing the false mechanic's lien, that such action violated the automatic stay, and that the newly-filed lien would present an obstacle to the prompt closing of the sale by the trustee.

The filing of the mechanic's lien by Paul Johnson on behalf of Southwest Village Water Company against M & J Feed Mill, Inc., of which Mr. Johnson is president, is a part of a continuing pattern employed by Mr. Johnson and the Johnson-related companies of confusing sales and conveyances designed to obstruct creditors, parties in interest and the judicial system.[1] The filing of the mechanic's lien now before the court was a continuation of that pattern.

The court finds that based on the facts set forth herein, the actions of Paul Johnson, individually and on behalf of Southwest Village Water Company, were for the purposes of asserting a false claim and obstructing administration of this estate and the sale of the Downing Street Apartments by the trustee, as evidenced by the total lack of proof of any labor or materials provided at any time from 1988 through March 6, 1990, the failure to assert the claim earlier, the assertion that Mr. Johnson consented to the work after the trustee was appointed and took possession, and the conflicting explanation that Mr. Johnson was actually trying to recoup some of the loss on the second deed of trust.

The actions of Mr. Johnson and Southwest Village Water Company constituted a willful, intentional violation of the stay.

---

1. Judicial notice is taken of the entire bankruptcy file in this case, which is replete with illustrations of dealings by Johnson and Johnson companies, both pre- and post-petition, for the purpose of frustrating creditors and the trustee.

For example, in proceedings involving the State Fair Manor apartments, debtor M & J Feed Mill was the last in a string of Johnson-related companies which regularly conveyed the title among themselves over a period of approximately three years in order to avoid condemnation proceedings by the City of Sedalia. After the last transfer, to M & J Feed Mill, deeds of trust sufficient to consume any equity were placed on the property in favor of Southwest Village Water Company and Ron Johnson, Mr. Johnson's son. At a hearing concerning the

trustee's motion to discontinue business and abate a public nuisance at the properties, the evidence was that no funds or other consideration equal to the amounts of the junior secured notes had been paid.

Even though the Johnson-related deeds of trust were listed in excess of half a million dollars, the undisputed testimony was that the property was worth less than $100,000 and that after appointment of the Chapter 7 trustee, Mr. Johnson had attempted to trade the property, *without the trustee's knowledge,* for an amount which the other party to the negotiations testified was knowingly inflated by both parties by several hundred thousand dollars as part of a "horse-traders'" deal.

Punitive damages may be awarded under § 362(h) where the violation of stay is willful and there is a finding of "appropriate circumstances" which constitute "egregious, intentional misconduct on the violator's part." *In re Knaus*, 889 F.2d 773, 776 (8th Cir.1989).

Appropriate circumstances of "egregious, intentional misconduct" exist. Paul Johnson recorded the mechanic's lien knowing the affirmations in the document were false and for the purpose of obstructing the trustee's impending sale of the property. Punitive damages are appropriate in this cause to punish Paul Johnson and Southwest Village Water Company and deter others similarly situated from such egregious conduct. The sum of $6,000 in punitive damages, payable to the bankruptcy estate, is just and proper in the circumstances.

There is no merit to the argument that punitive damages should not be awarded because respondents released the mechanic's lien after the motion for contempt was filed. The damage to the estate, resulting in delay of the sale and accrual of attorney fees, was already done. Furthermore, punitive damages are appropriate based on the circumstances described herein and Mr. Johnson's fraudulent intent in filing the bogus lien. Punitive damages in this instance will serve the purposes of both punishing Mr. Johnson and Southwest Village Water Company and deterring future similar behavior by these respondents and others who are tempted to make false oaths.

■ After the hearing, counsel for Southwest Village Water Company asserted by letter that pursuant to Local Bankruptcy Rule 3, damages for contempt cannot exceed $500.00. The issue was not raised at trial, but in any event, Local Rule 3 does not limit damages to $500.00. Local Rule 3, which provides that civil contempt fines under $500.00 may be entered by the bankruptcy court without report and recommendation to the district court, relates to civil contempt generally.

It does not pertain to the specific power in a core proceeding pursuant to 11 U.S.C. § 362(h) to assess actual or punitive damages for violation of the automatic stay as provided by the statute. See *In re Knaus*, 889 F.2d 773 (8th Cir.1989), from the Western District of Missouri, where a bankruptcy court's punitive damage award for violation of the automatic stay was recently affirmed by the Eighth Circuit Court of Appeals. Although Local Rule 3 was not at issue, the Eighth Circuit opinion did not question the bankruptcy court's power to enter a final order for punitive damages after a finding of contempt and violation of the stay, which was then appealed to district court.

Alternatively, if it is held by a higher court that an award of actual or punitive damages under § 362 for violation of the stay must be entered as a "fine" by the district court, this memorandum opinion may serve as the bankruptcy court's report and recommendation.[2]

IT IS THEREFORE ORDERED that judgment be entered in favor of the trustee and estate and against Southwest Village Water Company and Paul O. Johnson, jointly and severally, in the amounts of $1,100.00 in actual damages and $6,000.00 in punitive damages, plus the costs of this action.

---

2. If a report and recommendation must be made to district court on any contempt and damage findings under § 362(h), then Local

Rule 3 is simply invalid. If there is no power to enter such an award of damages, then a local rule cannot confer that power up to $500.00.