**In re Jeri L. PACE, Debtor.**

**John E. HAVELOCK; John R. Strachan, Appellants,**

v.

**Harold S. TAXEL, Trustee, Appellee.**

No. 93–56685.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1995.

Decided June 8, 1995.

As Amended on Denial of Rehearing
Oct. 11, 1995.

Thomas J. Yerbich, Yerbich & Associates, Anchorage, AK, for appellants.

Richard C. Norton, Estes & Hoyt, San Diego, CA, for appellee.

Before: HALL and LEAVY, Circuit Judges, and HOGAN,* District Judge.

LEAVY, Circuit Judge:

Debtor's counsel appeal from an affirmance of the bankruptcy court's award of costs and attorney's fees to the trustee, arguing that the trustee is not entitled to recover his fees under either sections 105(a) or 362(h) of the Bankruptcy Code. We uphold the decision in favor of the trustee but remand for a determination of the amount of damages to be awarded under section 105(a).

## FACTS AND PRIOR PROCEEDINGS [1]

Jeri LeMai ("LeMai") and her former husband, H. Russell Pace ("Pace"), were joint shareholders in and sole owners of two Alaska corporations, The Pines Corporation and Pace Corporation (jointly, "the Corpora-

---

* The Honorable Michael R. Hogan, Chief United States District Judge for the District of Oregon, sitting by designation.

1. The relevant underlying facts are not in dispute and have been adequately summarized elsewhere. *See, e.g., Havelock v. Taxel (In re Pace),* 159 B.R. 890, 893–97 (9th Cir. BAP 1993); *Battley v. Pace (In re Pace),* 132 B.R. 644, 644–46 (Bankr.D. Alaska 1991), *aff'd,* 146 B.R. 562, 563–64 (9th Cir. BAP 1992), *aff'd without op.,* 17 F.3d 395 (9th Cir.1994).

tions"). The Corporations' principal assets consisted of an Alaska nightclub and two liquor licenses. In May of 1984, LeMai and Pace retained the services of a local law firm to help them sell their interest in the Corporations. In January of 1985, the Corporations sold their assets, including the liquor licenses, to two individuals and a newly formed corporation, The New Pines Corporation ("NPC").

NPC issued a promissory note ("the Note") for a portion of the purchase price, and secured the Note with the two liquor licenses. LeMai and Pace later divorced, and LeMai received a sixty percent interest in the Note as a portion of her divorce settlement. Unfortunately, NPC did poorly and filed a Chapter 11 petition in bankruptcy in March of 1986. Three months later, the case was converted to a Chapter 7 liquidation. Pace then filed his own Chapter 11 petition in bankruptcy in September of 1986, which the bankruptcy court converted to Chapter 7 in December of the same year. Pace listed his security interest in the two liquor licenses as an exempt asset of his estate.

In May of 1987, the trustee in the NPC bankruptcy sold the two liquor licenses. Shortly thereafter, LeMai and Pace learned that, as the result of their attorneys' failure to include the two licenses in the UCC filings at the time NPC acquired the Corporations' assets, LeMai and Pace's purported security interest in the licenses was invalid. As a result, LeMai and Pace filed a malpractice action against their former lawyers in Alaska state court in October of 1987.[2] Pace did not amend his bankruptcy schedules of assets and liabilities to include the law suit.

In May of 1988, LeMai filed her own Chapter 7 petition in bankruptcy in California, where she had moved following her divorce. LeMai failed to include her Alaska state claim for legal malpractice as an asset on her schedule of assets and liabilities.[3] Believing LeMai's estate to be devoid of assets, the trustee allowed an order of discharge to be entered in September of that year. Five months later, the California bankruptcy court closed LeMai's case.

Following her discharge in bankruptcy, LeMai entered into an agreement with Pace in July of 1989 to share any proceeds received from the Alaska malpractice action. LeMai then retained John E. Havelock ("Havelock") to prosecute the Alaska law suit, and Pace hired John R. Strachan ("Strachan") to do the same.[4] When Pace informed Strachan of his pending bankruptcy, Strachan decided not to proceed with the malpractice action until after Pace had been discharged and his bankruptcy case closed, because "there was little point in proceeding with a case if the only beneficiaries of the work involved were to be creditors." *Havelock v. Taxel (In re Pace)*, 159 B.R. 890, 893 (9th Cir. BAP 1993) (quoting Strachan). Following Pace's discharge in bankruptcy in September of 1989, Havelock and Strachan ("the Appellants") filed a second amended complaint in the malpractice action, listing both LeMai and Pace as plaintiffs.

In April of 1990, LeMai disclosed to Havelock that she, too, had been in bankruptcy and that she had also received a discharge without ever having listed the malpractice action as an asset of her estate. Neither Havelock nor Strachan considered this information to be significant; however, when the defendant attorneys in the state court action ("the Defendants") learned of LeMai and Pace's nondisclosures, they urged the Appellants to inform the trustees in the two closed bankruptcies that the malpractice action constituted an asset of their respective bankruptcy estates. The Appellants refused the request, whereupon the Defendants filed a motion in Alaska state court, asking that the trustees be substituted as the real parties in interest. The Appellants opposed the motion and managed to convince the Alaska state court that the trustees had abandoned their

---

**2.** It is unclear whether LeMai had any prior knowledge of the Alaska state court action, or whether she consented to being listed as a plaintiff. In any event, a first amended complaint filed in November of 1987 removed her name as a plaintiff.

**3.** *See* note 2, *supra.*

**4.** LeMai and Pace retained the services of new counsel to pursue their malpractice action because the lawyer who originally handled the case had become City Attorney for Anchorage.

interests in the malpractice action and were not the real parties in interest. The Alaska state court denied the motion to substitute, and the Appellants continued to conceal the malpractice action from the trustees.

In December of 1990, the Defendants informed the United States Trustee in San Diego of the pending Alaska law suit. The U.S. Trustee in turn notified Harold S. Taxel ("Taxel"), former trustee in the LeMai bankruptcy. Taxel successfully petitioned the California bankruptcy court to reopen LeMai's case, and on February 7, 1991, the bankruptcy court reappointed Taxel as trustee. Taxel immediately informed the Appellants that LeMai's bankruptcy estate had been reopened, explained that her interest in the legal malpractice action constituted property of the bankruptcy estate, and warned that any further prosecution of the Alaska law suit would constitute a violation of the Bankruptcy Code's automatic stay provision.[5] The Appellants ignored the warning and continued to prosecute the Alaska case.

On February 13, 1991, a settlement conference was held in the Alaska state court proceedings. LeMai and Pace offered to dismiss their claims against the Defendants for $300,000; the Defendants agreed on the condition that the trustees[6] would approve of the settlement. Upon learning of the proposed settlement, the two bankruptcy trustees refused to agree thereto unless the proceeds were deposited into an escrow account not subject to disbursement until after the trustees' claims to the proceeds had been resolved. The parties agreed, and the funds were deposited into the escrow account on March 7, 1991.

The very next day, the Appellants filed a motion with the Alaska state court, asking that all of the settlement proceeds be disbursed to them within seven days. The Appellants failed to serve their motion on the trustee in Pace's reopened bankruptcy case, and Taxel only learned of the motion on March 14, 1991, one day before the funds were due to be disbursed. Upon learning of the Appellants' March 8 motion, Taxel promptly demanded that they withdraw their request for disbursement and warned them that the motion was a violation not only of the automatic stay, but of the settlement agreement as well. The Appellants refused to withdraw the motion. Both trustees and one of the Defendants opposed the motion, which was eventually denied by the Alaska state court.

Meanwhile, Taxel had filed an adversary proceeding in the California bankruptcy court against the Appellants, asserting a claim for the settlement proceeds, requesting damages for violations of the automatic stay, and seeking both declaratory and injunctive relief. On March 28, 1991, the bankruptcy court issued a preliminary injunction, enjoining the Appellants from receiving or disbursing the settlement proceeds during the pendency of the adversary proceeding.

The Appellants did not give up. When they failed in their attempts to have the bankruptcy court dismiss the adversary proceeding, they filed a motion in the Alaska state court on December 6, 1991, asking that court either to allocate the settlement proceeds, permit allocation by jury, or dissolve the settlement agreement. The Alaska state court denied the motion.

---

5. In his letter addressed to both Havelock and Strachan, [counsel for Taxel] explained that LeMai had removed herself from the Alaska state court malpractice action; that she moved to San Diego, filed bankruptcy, and obtained a discharge; that she moved back to Alaska and amended back in as a plaintiff; and that it appeared that she intentionally left the cause of action off her schedules. In addition, the letter explained: (1) that the bankruptcy estate is comprised of all legal and equitable interests of the debtor, citing [11 U.S.C.] § 541; (2) that the lawsuit being asserted by [Havelock and Strachan] was clearly included in property of the estate; (3) that any act to exercise control over this lawsuit [was] in violation of the automatic stay citing § 362(a)(3); and (4) that any further prosecution of the Alaska lawsuit would be a violation of the stay and could subject them to liability for damages.
*In re Pace,* 159 B.R. at 894.

6. The trustee in Pace's closed bankruptcy case, Kenneth Battley, also reentered the fray and may have sought to have the Alaska bankruptcy court reopen Pace's bankruptcy case as well. It appears, however, that Battley had dropped out of the picture some time after March 15, 1991. *See In re Pace,* 159 B.R. at 895 & n. 6.

On June 9, 1992, the bankruptcy court entered summary judgment in favor of Taxel, holding that (1) the proceeds of the state court malpractice action were property of LeMai's bankruptcy estate, (2) the Appellants had willfully violated the automatic stay, and (3) Taxel was entitled to recover his costs from the Appellants, including attorney's fees, incurred in fighting the Appellants' various attempts to get their hands on the settlement proceeds. The Appellants challenged each of these rulings before the Bankruptcy Appellate Panel ("BAP"). The BAP affirmed the bankruptcy court, and the Appellants have timely appealed to this court.

## ANALYSIS

### Standard of Review

■ Because we are in as good a position as the BAP to examine the decision of the bankruptcy court, we independently review the bankruptcy court's rulings. *See Dominguez v. Miller (In re Dominguez)*, 51 F.3d 1502, 1505–06 (9th Cir.1995) (quoting *Allred v. Kennerley (In re Kennerley)*, 995 F.2d 145, 146 (9th Cir.1993)). We examine *de novo* the bankruptcy court's conclusions of law, while reviewing for clear error its factual findings. *See id.*

### Discussion

### I. Attorney's Fees under 11 U.S.C. § 362(h)

### A. Willful Violation of Stay

■ The Appellants first contend that they should not be required to pay any, or at least, not all of the attorney's fees imposed by the bankruptcy court, because they did not willfully violate the automatic stay, and not to the extent found by the bankruptcy court.[7] The Appellants contend that the bankruptcy court based its imposition of costs and attorney's fees on three stay viola-

tions: the March 8, 1991 motion to release settlement proceeds, the December 6, 1991 motion to allocate recovery, and the Appellants' defense against the adversary complaint filed by Taxel. The Appellants argue, however, that they cannot fairly be charged with any wrongdoing as to the third matter because they were only defending themselves in a proceeding they did not initiate.

"An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir.1992) (quoting *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir.1989)).

The Appellants concede that they violated the automatic stay with respect to their March 8, 1991 motion to the Alaska state court, and they do not challenge the bankruptcy court's finding that their December 6, 1991 motion to the same court also constituted a violation of the automatic stay. With respect to their third contention, neither the bankruptcy court nor the BAP held that the Appellants violated the automatic stay by *defending* themselves in the adversary proceeding; rather, both courts declared that the Appellants should be held responsible for Taxel's costs and fees incurred in prosecuting

---

7. The Appellants no longer contend that they did not violate the automatic stay. They argued below that they could not have violated the automatic stay in either LeMai's or Pace's bankruptcy because the stays in both cases terminated when the bankruptcies were closed, and the stays were not automatically reinstated merely by virtue of the trustees' reopening of the two bankruptcies.

The Appellants now concede that the BAP was correct in holding that, because the malpractice action was never listed as an asset on either LeMai or Pace's schedules of assets and liabilities, it was not "abandoned" and therefore remained property of the bankruptcy estates *in custodia legis,* and continued as such until disposed of by the trustee(s).

the adversary proceeding, because it was the Appellants' conduct throughout this case, in both state and federal court, that necessitated Taxel's filing and prosecution of the adversary proceeding. *In re Pace*, 159 B.R. at 902. *See also In re Bloom*, 875 F.2d at 227 (approving an award of fees that included the cost of prosecuting the action for damages stemming from violation of the automatic stay).

The BAP held, and the materials provided show that

[the Appellants'] conduct involved:

1. Knowingly concealing the assets of the estate;

2. Prosecuting the malpractice claim without the permission of the trustees;

3. Preventing the substitution of the LeMai trustee into the state lawsuit when the trustee [was] a legitimate party in interest;

4. Misleading the state court as to bankruptcy law;

5. Refusing to relinquish proceeds to the LeMai trustee;

6. Attempting to take proceeds in contravention of the settlement agreement in violation of the automatic stay;

7. Attempting to circumvent the jurisdiction of the bankruptcy court by means of a motion to allocate recovery;

8. Harassing the trustee's counsel with threats of sanctions and disbarment.

*Id.* at 898.

In light of the above, the bankruptcy court did not err by finding that the Appellants had willfully violated the automatic stay.

### B. Trustee as "Individual"

■ Although we agree with the conclusions of both the bankruptcy court and the BAP that the Appellants' conduct amounted to a violation of the automatic stay, our inquiry does not end there. Section 362(h) states, in relevant part, that "An *individual* injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorney's fees[.]" 11 U.S.C. § 362(h) (emphasis added). The Appellants argue that, even if their conduct amounted to a willful

violation of the automatic stay, they cannot be held liable for the costs and attorney's fees incurred by Taxel, because he incurred those costs and fees as a trustee, *i.e.*, as the representative of a legal entity (the bankruptcy estate), and not as an individual. We agree.

There is no controlling authority from this or any other circuit that answers the question posed. Even the BAP split on this issue, with one judge concluding that the trustee was an individual for purposes of section 362(h) because he was an individual representing the estate of an individual, while the other two judges held that, because a trustee represents a thing and not a natural person, a trustee is not an individual entitled to recover damages under section 362(h). *In re Pace*, 159 B.R. at 903–904, 905–906.

Perhaps because paragraph (h) was only added to section 362 in 1984,[8] there is little case law dealing with the question of whether a Chapter 7 trustee is an individual entitled to recover as damages the costs and attorney's fees incurred by the trustee on behalf of the bankruptcy estate. However, two of the leading bankruptcy treatises hint that "individual" in this context should not be read so narrowly as to preclude either trustees, *see 2 Collier on Bankruptcy* ¶¶ 362.11 & n. 8, 362.12 & n. 4 (Lawrence P. King et al. eds., 15th ed. 1995), or their counterparts, *e.g.*, corporate debtors. *See* 1 David G. Epstein, et al., *Bankruptcy* § 3–33a at 362 (1992). Moreover, many of the reported decisions involving Chapter 7 trustees seeking damages under section 362(h) point in favor of treating such trustees as individuals. *See, e.g., Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 124 B.R. 426, 431 (S.D.N.Y.1991) (trustee was awarded damages consisting of one-third of the trustee's costs and fees), *appeal dism'd*, 982 F.2d 769 (2d Cir.1992); *Uecker v. Davidson (In re Bair Island Marine & Office Ctr.)*, 116 B.R. 180, 185 & n. 2 (Bankr.N.D.Cal.1990) ("individual" is synonymous with "entity," and can include a U.S. Trustee); *In re M & J Feed Mill, Inc.*, 112

---

8. *See* Pub.L. No. 98–353, Title III, § 304, 98 Stat. 352 (July 10, 1984).

B.R. 985, 989 (Bankr.W.D.Mo.1990) (award of $1,100 against "individual," representing ten hours of the trustee's time). *See also* cases collected at *Martino v. First Nat'l Bank in Harvey (In re Garofalo's Finer Foods, Inc.)*, 164 B.R. 955, 972 (Bankr.E.D.Ill.1994).

Nevertheless, we find the analyses of the majority in *In re Pace*, and of the bankruptcy judge in *In re Garofalo's Finer Foods, Inc.*, to be persuasive. In those two cases, the judges noted that, while a trustee can be an "individual" if the trustee is a natural person (as opposed to, e.g., a corporate entity), the individual's status as trustee precludes any finding that the trustee suffered any damages as an individual, because any harm suffered in the form of costs and attorney's fees is actually incurred by a thing, *viz.*, the bankruptcy estate, and not by the trustee as a natural person. *In re Pace*, 159 B.R. at 905–906; *In re Garofalo's Finer Foods, Inc.*, 164 B.R. at 972–73. *See also Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corp. Sys.)*, 175 B.R. 288, 291–92 (Bankr.E.D.Mo.1994) (the trustee was not entitled to recover damages under section 362(h) because he acted as the representative of a corporate entity's bankruptcy estate).

· This analysis and result comport with our holding in *Johnston Environmental Corp. v. Knight (In re Goodman)*, 991 F.2d 613 (9th Cir.1993). In that case we held that, while a corporate entity can be a *person*, it cannot be an *individual* for purposes of section 362(h), because "individual" is not synonymous with "person" under the relevant provisions of the Bankruptcy Code. *Id.* at 619–20. In light of the above, we conclude that a Chapter 7 trustee is not an "individual" for purposes of 11 U.S.C. § 362(h) entitled to recover attorney's fees as damages.

### II. Attorney's Fees under 11 U.S.C. § 105(a)

Although the bankruptcy court did not cite to section 105(a) of the Bankruptcy Code as an alternative basis for awarding costs and attorney's fees to the trustee, the BAP unanimously held that, regardless of whether or not damages were available under section 362(h), they were certainly proper under section 105(a). We agree.

Section 105(a) states, in relevant part, that

[t]he [bankruptcy] court may issue any order ... that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders ... or to prevent an abuse of process.

It is clear that, even though a trustee does not qualify as an "individual" for purposes of section 362(h), a trustee can recover damages in the form of costs and attorney's fees under section 105(a) as a sanction for ordinary civil contempt. *See United States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756, 767 (9th Cir.1994) (damages not otherwise available to a corporate debtor under section 362(h) for a creditor's willful violation of the automatic stay were nevertheless available under section 105(a) as a sanction for ordinary civil contempt; distinguishing *In re Goodman, supra*). It is equally clear that, while an award of damages under section 362(h) is mandatory, an award of damages under section 105(a) is discretionary. *Id.; In re Pace*, 159 B.R. at 904.

In *In re Cascade Roads, Inc.*, we remanded to the bankruptcy court to allow it to exercise its discretion in deciding whether and to what extent it would impose sanctions under section 105(a). In the instant appeal, however, the BAP found that

[t]his case clearly warrants the granting of sanctions. Upon the egregious facts of this case, and from extensive review of the trial court record, there can be little doubt that the trial court's intention was to award sanctions for violating the automatic stay, whether under § 362(h) or § 105. It is absolutely clear to this Panel that the

# 194

trial court felt outrage over the actions of Appellants Havelock and Strachan in violating the stay. A remand for findings to this effect would be superfluous.

159 B.R. at 904–905.[9]

We agree with the BAP that the materials before us show great displeasure on the part of the bankruptcy court with the conduct of the Appellants. Nevertheless, and for the reasons set forth in *In re Goodman,* we believe that a remand is in order so that the bankruptcy court may determine the extent of any damages it may choose to impose against the Appellants.

## CONCLUSION

The BAP's decision upholding the bankruptcy court's entry of summary judgment in favor of Taxel is AFFIRMED. The BAP's conclusion that Taxel may recover his costs and attorney's fees as damages under 11 U.S.C. § 105(a) is also AFFIRMED. The BAP's award of damages to Taxel under section 105(a) is VACATED, and the case is REMANDED with instructions to the bankruptcy court to determine the amount of any such award to Taxel under section 105(a).[10] The bankruptcy court shall determine the amount of such award on remand.

9. Technically, two judges joined in the above, while the third judge concluded, after examining such factors as that "sanctions were imposed only after notice, hearing, and an opportunity for appellants to conduct discovery[,] ..." that an award of sanctions under section 105(a) was appropriate under the circumstances. 159 B.R. at 907.

10. In his brief, Taxel asked us to strike the Special Addenda appended to the Appellants' opening brief and urged us to disregard all assertions contained therein. Taxel's request falls short of the requirements of Fed.R.App.P. 27 and 9th Cir.R. 27–1, and is accordingly denied.