In re SUNRISE SUITES, INC., Debtor.

**Harry M. Weiss & Associates, Appellant,**

v.

**Eric Nelson Auctioneering, et al., Appellees.**

**Bankruptcy Nos. BK–S–99–12406–LBR, BK–S–99–12412–LBR, BK–S–99–12413–LBR.**
**Adversary No. 00–2052–LBR.**
**No. CV–S–00–1269–RLH (LRL).**

United States District Court,
D. Nevada.

Sept. 20, 2001.

Evangelina Garcia Mendoza, Garcia-Mendoza & Snavely, Chtd., Las Vegas, NV, for Harry M. Weiss & Associates, P.C., Appellants.

Scott Fleming, Gordon & Silver, Ltd., Las Vegas, NV, for Eric Nelson Auctioneering, Appellees.

Jodi Goodheart, Jones Vargas, Las Vegas, NV, for Sunrise Suites, Inc.

## ORDER

HUNT, District Judge.

Before this Court is Appellant's Opening Brief (# 8), filed June 11, 2001, asking the Court to review the grant of summary judgment by Bankruptcy Judge Linda B. Riegle. The Court has also considered Appellees' Opening Brief (# 9) and Appellant's Reply Brief (# 11).

## BACKGROUND

The underlying proceedings in this case concern the bankruptcy reorganization of Sunrise Suites Hotel & Casino and RV Park ("Properties"). On November 9, 1999, the Bankruptcy Court entered a Confirmation Order declaring that the Properties would be sold at auction and named Appellee Eric Nelson Auctioneering as the auctioneer. The Confirmation Order states the following with regards to any commissions paid in conjunction with the auction:

> From the 3% commission Auctioneer will offer a 1% commission to a buyers' participating broker, subject to registration and other requirements determined by the Auctioneer in consultation with Proponents.

On January 14, 2000, the Chapter 11 trustee submitted an "Ex Parte Application for Order Authorizing Debtor to Employ Auctioneer Pursuant to 11 U.S.C. § 327" ("Employment Application"). The Auctioneer Agreement accompanying the Employment Application states:

> A 1% commission will be paid by Eric Nelson Auctioneering to the licensed broker whose prospect pays and settles for the property. To qualify for the commission, the licensed agent or broker must fulfill each step of a four step

process: (1) accompany the Prospect to Prospect's first attendance at a property preview (open house) and sign in at an open house with the client; (2) execute a broker registration letter (to include client's signature, broker's signature, and agent's signature); (3) accompany the Prospect to the auction and register with the client at the auction; and (4) close escrow.

On January 19, 2000, the Bankruptcy Court entered an "Ex Parte Order Authorizing Debtor to Employ Auctioneer Pursuant to 11 U.S.C. § 327" ("Employment Order") in which all terms in the Auctioneer Agreement were expressly approved.

On January 24, 2000, investor Carl Icahn spoke with attorney Harry M. Weiss ("Weiss") and employed Appellant Harry M. Weiss & Associates, P.C., to represent Icahn at the auction for the purpose of bidding on the Properties. Weiss thereafter spoke with Aleda Nelson, of Appellee Eric Nelson Auctioneering, and informed her that he wished to participate in the auction on behalf of an undisclosed principal. Aleda Nelson gave Weiss a packet containing information about the Properties and relevant court orders pertaining to the auction.

At that time, Weiss was given a copy of both the Auction Brochure and Auction Summary. The Auction Brochure contained the same court-approved procedures to qualify for a broker's commission found in the Auctioneer Agreement. The Auction Brochure further noted that "[t]here can be **NO EXCEPTIONS** to the procedure and **NO** oral registrations will be accepted. No one is authorized to make exception to these rules" (emphasis in original). The Auction Summary also included the four-step registration process and additionally noted that a commission would only be offered to a broker who

complied with Nevada licensing requirements.

On January 26, 2000, the date of the auction, Weiss partially completed a registration form, failing to answer questions regarding his participation as a qualified broker eligible for commission. At the auction, Weiss bid on the Properties as directed by Mr. Icahn, who communicated with Weiss via cell phone during the auction. Weiss, on behalf of Mr. Icahn, made the winning bid at the auction. After the auction, Weiss spoke with both Eric and Aleda Nelson and made it clear that he sought the one percent participating agent's fee. The Nelsons did not object to payment of the fee to Weiss' firm at that time. However, Appellees did not pay Appellant the one percent fee.

In response to Appellees' refusal to pay the participating broker's fee, Appellant filed a complaint in Bankruptcy Court alleging contract, business tort, and equitable causes of action. Appellees moved for summary judgment, opposed by Appellant, and Appellant countermoved for summary judgment. The Bankruptcy Court granted Appellees' motion and denied Appellant's motion, and published written findings of fact and conclusions of law. Appellees now bring the present appeal of the Bankruptcy Court's decision.

## DISCUSSION

■ A bankruptcy court's findings of fact shall not be set aside by a reviewing court unless those findings are clearly erroneous. *See In re Candland,* 90 F.3d 1466, 1469 (9th Cir.1996). However, conclusions of law are reviewed *de novo. See In re Filtercorp, Inc.,* 163 F.3d 570, 578 (9th Cir.1998); *Havelock v. Taxel (In re Pace),* 67 F.3d 187, 191 (9th Cir.1995).

This Court stands in the same position as the bankruptcy court below in applying the standards set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which governs summary judgment. *See In re Stephens,* 51 B.R. 591, 594–96 (9th Cir. BAP 1985). On appeal of a summary judgment motion, this Court must "determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the [bankruptcy] court correctly applied the relevant substantive law." *In re Filtercorp,* 163 F.3d at 578 (quoting *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir.1996)).

## I. Findings of Fact

It is unclear whether Appellant directly challenges the Bankruptcy Court's findings of fact. Nevertheless, this Court has reviewed the findings of fact issued by Bankruptcy Court Judge Linda B. Riegle and holds that the findings are not clearly erroneous.

Moreover, the Court has reviewed the briefs and accompanying materials, and finds that no material issues of fact exist in this case. The Court notes that Appellant has admitted receiving the Auction Brochure and Auction Summary, both of which clearly stated the court-approved requirements for a broker's commission. The Appellant has also admitted failing to complete the four-step registration process detailed in the Auction Brochure and Auction Summary. Finally, Appellant has admitted that neither it nor Weiss are registered real estate brokers in Nevada or any other state.

## II. Conclusions of Law

Appellant contends that Judge Riegle committed reversible error by granting Appellees' summary judgment motion. This Court has reviewed the issues presented in this case and finds that Judge Riegle correctly applied the relevant sub-

stantive law as to each of Appellant's causes of action.

## A. Breach of Written Contract Claim

■■ Appellant's first cause of action is based on the alleged breach of a written contract between Appellant and Appellees. A contract is formed only after acceptance of an offer. *See* 1 CORBIN ON CONTRACTS §§ 1.23, 3.9 (1993). Acceptance of a unilateral contract requires not a promise to perform, but a fulfillment of the terms of the offer. *See* CORBIN § 3.9.

■ Contracts for the employment and compensation of professionals in bankruptcy proceedings are governed by 11 U.S.C. §§ 327 and 328. Section 328 states that any compensation agreements proposed by the bankruptcy trustee must receive the court's approval. "[T]he bankruptcy court has broad and inherent authority to deny any and all compensation when an attorney fails to meet the requirements of these provisions" or related court orders. *In re Lewis*, 113 F.3d 1040, 1045 (9th Cir.1997).

■ Here the Auction Brochure and Auction Summary constituted a unilateral offer by Appellant Eric Nelson Auctioneering to enter into a contract to pay a broker's commission. It is clear that Appellant failed to fulfill the requirements of the four-step registration process contained in both the Auction Brochure and Auction Summary. Because Appellant failed to substantially comply with the registration process approved by the Bankruptcy Court, no contract was formed. Without a contract, no breach could have occurred.

As a result of its failure to comply with court-imposed requirements for a broker's commission, summary judgment was ap-

propriate as to Appellant's breach of written contract claim. This Court does not find it necessary to review the Bankruptcy Court's conclusions as to whether Nevada licensing statutes also prevent Appellant from collecting a broker's fee.

## B. Breach of Orally Modified Contract

In addition to its breach of written contract claim, Appellant included a separate breach of contract claim based on oral modifications that Appellant alleges were agreed to by Appellees. Specifically, Appellant alleges that a waiver of the court-imposed conditions was effected when the Nelsons did not object to Weiss's asserted claim to the broker's commission.[1]

Even if the waiver had been agreed to by Appellees, it would have violated the Bankruptcy Court's registration requirements. Any waiver would have required the approval of the Bankruptcy Court, and Appellant never received such approval. Again, as a result of Appellant's failure to comply with court-imposed requirements for a broker's commission, and failure to gain court approval of any waiver of such requirements, summary judgment was appropriate as to Appellant's breach of orally modified contract claim.

## C. Breach of Fiduciary Duty

■ Appellant alleges that Eric Nelson had a duty as an agent "for both Seller and the Buyer" to inform Weiss that he did not qualify for the broker's commission. Appellant was not the buyer or the seller at the auction, and therefore was owed no fiduciary duty. Moreover, the Nelson's fulfilled any duty they may have had by properly delivering to Weiss copies

---

1. The Court notes that while an average person might reasonably rely on such an oral waiver, an experienced attorney handling a multi-million dollar sale of property and expecting a generous fee · of over $400,000 would surely reduce such a waiver to writing.

of the Auction Brochure and Auction Summary.[2] The Bankruptcy Court's granting of summary judgment on Appellant's breach of fiduciary duty claim was therefore not in error.

### D. Breach of Covenant of Good Faith and Fair Dealing

Appellant also alleges that Appellees breached a contractual duty of good faith and fair dealing. No contract existed, for reasons described above, and therefore no breach occurred. The Bankruptcy Court's grant of summary judgment as to this claim was without error.

### E. Constructive Fraud

Appellant further alleges that Appellees committed constructive fraud by breaching a legal or equitable duty owed Appellant. As described above, Appellees owed no such duty to Appellant beyond providing the court-authorized materials. As such, the Bankruptcy Court did not err in granting summary judgment as to Appellant's constructive fraud claim.

### F. Unjust Enrichment

Finally, Appellant asserts that Appellees were unjustly enriched as a result of Appellant's actions, and that Appellant is entitled to recovery. A claim for unjust enrichment requires "a benefit conferred on the defendant *by the plaintiff.*" *Topaz Mutual Company, Inc. v. Marsh,* 108 Nev. 845, 856, 839 P.2d 606, 613 (1992) (emphasis added). If any "benefit" existed here, it was conferred not by Appellant, but by the buyer, Mr. Icahn. As Appellant did not itself provide any benefit to Appellees, the Bankruptcy Court's grant of

summary judgment as to Appellant's unjust enrichment claim was not in error.

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that the judgment of the Honorable Linda B. Riegle is AFFIRMED.

---

2. The Court also finds implausible Appellant's contention that Mr. Icahn would have walked away from a $34 million deal on the basis of Appellant's ineligibility for the commission. *See* Appellant's Opening Brief at 41. If Mr. Icahn and Mr. Weiss are such "good friends," the Court is sure that Mr. Icahn has adequately compensated Mr. Weiss for his two days of service in procuring the auctioned properties.