**In re Vernon Lamont WILSON, Debtor.**

**Neil C. Gordon, Plaintiff,**

v.

**Dannie Hill, Raymond E. Thomas, and Ocwen Loan Servicing, LLC, Defendants.**

**Bankruptcy No. 05–60260–CRM. Adversary No. 08–6071–CRM.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

July 12, 2011.

Michael F. Holbein, Arnall Golden Gregory LLP, Atlanta, GA, for Plaintiff.

Dannie Hill, Stone Mountain, GA, pro se.

J. Owen Campbell, Irvine, CA, Kenneth Hindman, Decatur, GA, for Defendant Ocwen Loan Servicing, LLC.

## *ORDER*

C. RAY MULLINS, Bankruptcy Judge.

THIS MATTER is before the Court on the Motion for Summary Judgment (the *"Motion"*) (Doc. No. 31) by Defendant Ocwen Loan Servicing, LLC (*"Ocwen"*). On February 15, 2008, the Plaintiff, as chapter 7 trustee, filed the Complaint. On January 5, 2010, Ocwen filed the Motion, and on February 23, the Plaintiff filed a Response to the Motion (the *"Response"*). Both parties submitted briefs and statements of facts. On March 16, 2010, Ocwen filed a reply. On December 2, 2010, the Court held a hearing on the Motion and took the matter under advisement.

This is a core proceeding, and the Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. The Court finds that Ocwen is not liable and issues this Order granting summary judgment to Ocwen for the reasons set forth below.

### I. FACTS

1. On January 3, 2005, the Debtor filed his chapter 13 case and scheduled a claim secured by real property at 1434 Beattie Avenue, Atlanta, GA (the *"Property"*).

2. On February 24, 2005, Ocwen filed a motion for relief from the automatic stay.

3. On March 24, 2005, the Court entered the Order Granting Motion for Relief From Stay (the *"Lift Stay Order"*). The chapter 13 trustee signed off on the Lift Stay Order indicating she had "no opposition." The order states in relevant part:

> IT IS HEREBY ORDERED AND ADJUDGED that the 11 U.S.C. § 362(a) automatic stay is lifted as to Movant herein, its successors and assigns, regarding the [Property]. FURTHER ORDERED that Movant, its successors and assigns, may proceed to assert its rights, including, but not limited to, the institution and completion of foreclosure proceedings, reasonable fees and to assert any and all of its respective rights and remedies under applicable law, as to its collateral.

4. After obtaining relief, Ocwen continued to proceed with foreclosure of the Property. However, representatives of the Debtor contacted Ocwen and requested a payoff quote, informing Ocwen that there was going to be a sale of the Property. After some negotiation, Ocwen agreed to accept $142,233.99 in satisfaction of its claim. (Ocwen's acceptance of this amount will be referred to hereinafter as the *"Payoff."*)

5. On February 16, 2006, the Property was sold to Defendant Dannie Hill (*"Hill"*) for $151,000. Hill obtained a mortgage from Omni National Bank (*"Omni"*) which had appraised the Property at $271,000. (Hill's purchase of the Property will be referred to hereinafter as the *"Short Sale"* or *"Sale."*)

6. On February 17, 2006, Hill contracted to sell the Property to a third party, and on March 30, 2006, the parties closed the sale for $255,000. A HUD–1 settlement statement shows Hill received $75,406.85 at the closing.

7. On April 12, 2006, the case was converted to chapter 7, and the Plaintiff was appointed as the trustee.

8. On January 30, 2007, the Court entered an order granting the Debtor's motion for waiver of discharge.

9. On February 15, 2008, the Plaintiff commenced this adversary proceeding, seeking to recover property lost as a result of the allegedly unauthorized and fraudulent Short Sale conducted by Hill and Raymond E. Thomas (*"Thomas"*).

10. The only fact in dispute is the value of the Property at the time of the Short Sale and the Payoff. Ocwen had obtained a Broker's Price Opinion of $165,000 (the "BPO") in January 2005 and submitted a proof of claim in the amount of $162,433.70 in the bankruptcy case. Hill purchased the Property for $151,000 at the Short Sale. The Plaintiff claims that the Property was worth between $255,000 (what Hill sold the Property for) and $271,000 (the appraisal by Omni). (Doc. No. 33, Ocwen's Statement of Undisputed Facts; Doc. No. 47, Plaintiff's Statement of Facts).[1]

---

**1.** "Plaintiff admits that 'Ocwen's Proof of Claim lists Ocwen's valuation of the collateral, the Property, as $165,000.' Plaintiff denies that this was the value of the Property at the time the Debtor sold the Property to Defendant Hill. . . . At the time the Debtor sold the Property to Defendant Hill for $151,000, the Property was worth between $255,000 and $271,000." (Doc. No. 47, Plaintiff's Statement of Facts).

## II. MOTION FOR SUMMARY JUDG-MENT STANDARD

FED.R.CIV.P. 56, made applicable to this adversary proceeding by FED.R.BANKR.P. 7056, provides that summary "judgment sought should be rendered if the pleadings, the discovery, and the disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact that the movant is entitled to judgment as a matter of law." The Court must view the movant's factual inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, not all disputed facts are relevant to a summary judgment ruling. "[I]n the event there is a real dispute as to the facts, it initially must be determined whether the facts in issue are material. A dispute as to an immaterial fact does not preclude summary judgment." 5B CHARLES A. WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 2725 (3d ed. 2010); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a fact is material depends on the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the *governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (noting that the substantive law determines what facts are critical and which are irrelevant).

## III. DISCUSSION

The Plaintiff sets forth two theories of recovery against Ocwen. The first theory is that Ocwen's act to recover its prepetition claim violated the automatic stay. The second is that Ocwen violated "applicable law" by actively participating in the Sale. According to the parties' statements of facts, the value of the Property is in dispute. (Doc. No. 33, Ocwen's Statement of Undisputed Facts; Doc. No. 47, Plaintiff's Statement of Facts.) The issue, on summary judgment, is whether the disputed value of the Property presents a genuine issue of material fact as to the Plaintiff's claims that Ocwen is liable for damages.

### A. Liability for Willful Violation of the Automatic Stay

First, the Plaintiff asserts that Ocwen is liable for damages pursuant to sections 362(k) and 105(a) of the Bankruptcy Code (the "Code"). The Plaintiff alleges that Ocwen's negotiation and acceptance of the Payoff was an act to recover a prepetition claim in violation of section 362(a), and that Ocwen's violation was willful because its acts were intentional and knowing. The Plaintiff argues for recovery either as an individual injured by Ocwen's willful violation, or in the alternative, through the Court's contempt power. (Doc. No. 1, Compl. ¶¶ 57, 59, 60).

Section 362(k) provides for damages to "an individual *injured* by any willful violation of a stay ... including costs and attorney's fees, and, in appropriate circumstances, ... punitive damages." 11 U.S.C. § 362(k) (previously codified at 11 U.S.C. § 362(h) prior to 2005 amendments) (emphasis added). A party seeking damages for a stay violation must establish that: (1) a violation occurred; (2) the violation was committed willfully; and (3) the violation caused actual damages. *See Hampton v. Yam's Choice Plus Autos, Inc., (In re Hampton)*, 319 B.R. 163, 170–71 (Bankr.E.D.Ark.2005) (additional citations omitted). A violation of the stay includes "any act to collect, assess, or recover a claim that arose before commencement of the case under this title." 11 U.S.C. § 362(a)(6).

■ While the substantive law does not specify value as a material element, value may be relevant to a determination of damages. However, the Court finds that Ocwen's conduct did not cause an injury which would make Ocwen liable pursuant to § 362(k) or 105(a).[2] The Plaintiff argues that the disputed value constitutes a genuine issue of material fact, and that the injury to the estate was the profit pocketed by Defendants Hill and Thomas. However, Ocwen did not realize or cause the alleged injury. Whatever injury may have occurred came after the Payoff and was not a result of Ocwen's conduct. Ocwen had a claim for $162,433.70 at the time of the Debtor's filing and had obtained a valuation of $165,000. Ocwen eventually accepted $142,233.99—approximately 87% of its claim amount. Consequently, there were no additional funds which could go to the estate. If the facts were different—if Ocwen had recovered surplus funds and failed to turn them over, then its conduct would have caused injury. However, that is not what happened. Whatever occurred after the Payoff was neither in Ocwen's control nor caused by its conduct.

■ The alternate avenue to recovery is section 105(a) of the Code—the court's statutory power to award sanctions for a willful violation of the stay. *Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1552 (11th Cir.1996). There must be clear and convincing evidence to support a civil contempt finding. *Id.* at 1545. A violation is willful if the defendant "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *Id.* at 1556. Specific intent is not required for a finding of willful violation. *Id.* at 1555. Once there is a showing of willful violation, the burden shifts to the alleged contemnor to show that it could not comply with the automatic stay, including evidence of substantial, if not complete, compliance with a court order made as part of a good faith effort to comply with the stay. *Id.* at 1556–57 (citing *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir.1990)). The twin purposes of civil contempt sanctions are (1) to compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) to coerce the contemnor into complying with the court order. *Id.* at 1557.

■ The substantive law of civil contempt does not indicate that the Property's value is an issue of material fact. Material facts would include: Ocwen's conduct violating the stay; Ocwen's knowledge of the stay at the time of its violation; and Ocwen's attempts to comply with the automatic stay. Value may be relevant for the purpose of determining sanctions—the amount needed to compensate the Plaintiff and the estate for the losses caused by the contemptuous act. Ocwen's acts of negotiating and accepting the Payoff constitute an act to "recover" or "collect" a prepetition claim. Ocwen intended its acts in accepting the Payoff and knew that the stay was in place, making its violations

---

**2.** Ocwen argues that § 362(k) does not apply because the Plaintiff, as trustee, is not an "individual." Courts are split on the issue of whether the trustee is an "individual" for purposes of § 362(k). *Compare Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 192–93 (9th Cir.1995) (finding that the trustee is not an individual because damages would be awarded to a thing, the estate, and not to a natural person), *with Martino v. First Nat'l Bank (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 438–40 (N.D.Ill.1995) (rejecting *Pace's* narrow interpretation and adopting a broader reading of individual to encompass a chapter 7 trustee). Resolution of this issue is not necessary for the Order; the Court makes no determination as to whether the Plaintiff is an "individual." Section 362(k) does not apply because there is no injury.

willful, without regard to its specific intent to violate the stay. However, evidence of Ocwen's substantial efforts to comply with the automatic stay includes obtaining the Lift Stay Order, pursuing foreclosure, and obtaining the BPO. While the Lift Stay Order explicitly authorized Ocwen to pursue foreclosure, it did state that Ocwen could "proceed to assert its rights, including but not limited to, the institution and completion of foreclosure ... and to assert any and all of its respective rights and remedies under applicable law, as to its collateral." If Ocwen had known the Property was worth more, it stands to reason that it would have negotiated a higher Payoff, rather than accept a 13% haircut. Ocwen did not receive any more than it was entitled to as a secured creditor.

One key factual distinction sets this case apart from two cases which the Plaintiff argues support his position.[3] The chapter 13 debtors in *Taylor* and *Olufelo* sold their properties for a direct and immediate profit. Here, the Debtor's representatives conducted the alleged fraud in a two-step transaction: first, the Property was sold to Hill for $151,000 (not much more than the Payoff of $142,233.99), and then Hill

flipped the Property, selling it for $255,000. Such facts illustrate that Hill and Thomas, who had submitted fraudulent repair estimates [4] to Ocwen, were concealing their fraudulent conduct from Ocwen, as well as from the Plaintiff. Noting that the purpose of civil contempt is to compensate the complainant and to coerce the contemnor into complying with the automatic stay, the Court finds that sanctions for Ocwen's conduct under these facts is not appropriate. Compensation is not warranted because Ocwen did not cause any purported loss. Ocwen's conduct shows substantial compliance with the automatic stay, and Ocwen could not have prevented the fraud perpetrated by Hill and Thomas. In *Taylor*, the court compared the Plaintiff's argument to the last clear chance doctrine in tort law. *Gordon v. Taylor (In re Taylor)*, 430 B.R. 305, 314 (2010) ("Trustee doesn't assert that Deutsche received any more than it was entitled to as an oversecured creditor, just that Deutsche's failure to move for relief from stay somehow prevented Trustee from recovering the equity funds provided directly to Debtor at the Property's closing.") As in *Taylor*, the Court here concludes that no action by the secured credi-

---

3. *Gordon v. Taylor (In re Taylor)*, 430 B.R. 305, 315 (2010); *Gordon v. Olufelo (In re Olufelo)*, 2009 WL 6498509, 2009 Bankr.LEXIS 4040 (Bankr.N.D.Ga. May 22, 2009).

- In *Taylor*, after converting from chapter 13 to chapter 7, the debtor sold property of the estate, paid off the mortgage holder, and pocketed the remaining $20,262.24. The court found that the mortgage holder's negotiation and acceptance of the payoff constituted a willful violation of the automatic stay. However, the court concluded there was no "injury" because the mortgage holder did not receive any of the surplus funds and could not have prevented the unauthorized sale.
- In *Olufelo*, the chapter 13 debtor sold real property of the estate without court ap-

proval and pocketed the profit after paying off the first and second mortgage holders. The case was converted to chapter 7, and the chapter 7 trustee filed a complaint against the debtor and the mortgagors. The court found that the chapter 7 trustee "has established a claim for relief against [the mortgagor] based on an intentional violation of the automatic stay," comprised of providing an online payoff quote and posting the payoff funds to the debtor's account. However, the court did not award summary judgment as to the damages, stating that the damages issue required further factual findings.

4. Doc. No. 1, Complaint ¶ 31.

tor "could have stopped the sale." *Taylor,* 430 B.R. at 314.

### B. Liability for Failure to Comply with Section 363 of the Code

 The Plaintiff contends that Ocwen was "negligent" in the fraud perpetrated by Hill and Thomas, who posed as the Debtor's representatives and sold the Property for a profit. (Doc. No. 46, Resp. p. 4). The Plaintiff contends that the Lift Stay Order still required Ocwen to comply with the "applicable law" of section 363 of the Code governing the sale of property of the estate. According to the Plaintiff, Ocwen's negotiation and acceptance of the Payoff violated section 363, and the Court should sanction Ocwen pursuant to section 105(a) of the Code. (Doc. 1, Compl. ¶ 63; Doc. 46, Response, pp. 6–7, 12). The Plaintiff argues that value is a material issue in dispute. If the value of the Property were between $255,000 and $271,000, then Ocwen is liable for damages because it took the lesser Payoff and enabled Hill and Thomas to conduct the unauthorized Short Sale. The Plaintiff posits that had Ocwen refused the Payoff, a foreclosure sale would have generated surplus funds for the estate. However, the substantive law does not support the Plaintiff's argument that the Property's value is a material fact.

Section 363 provides for the use, sale and lease of property of the estate. It is clear from the plain meaning of the statute that the obligation is on the "trustee, after notice and a hearing," to get approval from the court prior to selling, using, or leasing property of the estate. 11 U.S.C. § 363. The section "defines the rights and powers of the trustee." H. REP. NO. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977), pp. 344–346. In a chapter 13 case, such rights and powers reside with the debtor. 11 U.S.C. § 1303. Section 363 is not the "applicable law" which prevents Ocwen from accepting the Payoff of its mortgage claim because the statute, on its face, applies only to trustees and debtors. It does not place a duty on Ocwen to get court approval and provide notice. If Ocwen planned on foreclosure, then it would have obtained relief from the stay, which it did. However, Ocwen did not sell the Property in foreclosure. It also did not sell the Property in the unauthorized sale. Negotiation and acceptance of a Payoff do not constitute selling the Property. Furthermore, sanctions are not appropriate where Ocwen's conduct demonstrates substantial compliance with the Lift Stay Order and applicable law. *See supra* pp. 7–8.

### IV. CONCLUSION

The Court finds that Ocwen is not liable for damages for willful violation of the automatic stay. The standard for summary judgment motions and the analysis of the substantive law reveal that the disputed value is not a genuine issue of material fact.

**IT IS ORDERED** that the Motion be and is hereby **GRANTED.**

The Clerk's Office is directed to serve a copy of this Order upon the Plaintiff, Plaintiff's Attorney, Ocwen, Ocwen's Attorney, and the remaining Defendants.

**IT IS ORDERED.**